CASE 51—INDICTMENT AGAINST S. A. PATE FOR BECOMING INTERESTED
IN A ROAD CLAIM WHILE HOLDING THE OFFICE OF ROAD SUPER-
VISOR.

# Commonwealth v. Pate.

### APPEAL FROM BRECKINRIDGE CIRCUIT COURT.

JUDGMENT DISMISSING INDICTMENT AND COMMONWEALTH APPEALS.
REVERSED.

OFFICERS—PRESUMPTION THAT OFFICER HAS TAKEN OATH.

Held:   Under Kentucky Statute, section 4332, providing for the pun-
ishment of any road supervisor who shall become interested
in any road or bridge order or certificate, or any claim growing
out of such work, a road supervisor can not escape punishment
on the ground that he had not taken the oath of office, as it will
be conclusively presumed, as he was discharging the duties of
the office and receiving its emoluments, that he had taken the
oath, such a presumption being necessary for the protection of
the public.

ROBT. J. BRECKINRIDGE, ATTORNEY GENERAL AND WEED S.
CHELF, COMMONWEALTH'S ATTORNEY FOR APPELLANT.

The defendant S. A. Pate was indicted in the Breckinridge
Circuit Court, under section 4332, Ky. Stats., for becoming in-
terested in road claims while acting as Supervisor of Roads in
Breckinridge county.

Two questions are presented:

1. Is the indictment good on demurrer?

2. Should the defendant's motion for a peremptory instruction
have been sustained?

Appellee demurred upon the ground that sec. 4332 only ap-
plies to work let out by contract, and the indictment not spe-
cifically alleging the kind of road work, it was demurrable.
The court overruled the demurrer upon the idea that the spirit
and meaning of the section was to apply to any work on roads
worked under the tax system, no matter by what process they
were worked.

The legislative intent in passing this section, certainly was to
prevent any of those officers therein named from bartering
trafficking, or becoming in any way interested in these road
claims growing out of the work upon roads over which they
had supervision.

' While the court was right in overruling the demurrer, we think the court was clearly wrong in sustaining appellees' motion for a peremptory instruction. The reason for sustaining this motion was because the order qualifying the appellee as supervisor did not show that he was sworn, or in other words the oath was not "noted of record," as the statute requires. We claim that the law places the burden on him to show that fact. The presumption is that all officers do their duty. While the provision of the statute requiring the officers to be sworn may be mandatory, we think the provision requiring the oath "to be noted of record" is directory.

### AUTHORITIES CITED.

Jones on Evidence, vol. 1, section 38, &c.; Nelson v. People, 23 N. Y., 293; Masters' Exr. v. Bienker, 87 Ky., p. 1; Greer v. Wintersmith, 9 Ky. Law Rep., 96; Wood v. Terry, 4 Laws N. Y., 80; Wood v. Morehouse, 45 N. Y., 368; 1 Laws N. Y., 405; 16 Ky. Law Rep., p. 63.

D. R. MURRAY, ATTORNEY FOR APPELLEE.

H. C. MURRAY AND D. H. SEVERS. OF COUNSEL.

Two questions are presented:

*First.* Should the demurrer to the indictment have been subtained?

*Second.* Did the court err in peremptorily instructing the jury to find the defendant not guilty?

*First.* Under the statute there are two methods of working roads in counties in which a tax is levied, for that purpose; first by contract; second by hired hands, teams, &c., Ky. Stats., section 4315, provides "that the supervisor with the consent of the County Judge may designate certain roads and parts of roads, that are not to be let out as heretofore provided, but which are to be worked and kept in repair either by special contracts, privately made, or by hands and teams hired by him, &c. The two methods are separate and distinct, section 4332, provides that it shall be unlawful for . . . the supervisor to become directly or indirectly interested in any contract for working roads or building or repairing bridges or buy or become interested in any road or bridge order or certificate growing out of such work. This section clearly means contract work. Now, apply section 4315, with its distinction between contract work, and work by hired hands and teams and it is clear that the penalty is only prescribed as against the officer becoming interested in claims growing out of contract work.

If this construction is correct then the demurrer to the indict-
ment should have been sustained. It affirmatively appears from
the road order set out in the indictment and from the aver-
ments of the indictment that the claim collected by defendant
was not for contract work on the roads, but was for pay for
work actually done on the roads by defendants' teams.

2. The peremptory instruction was proper. All the evidence intro-
duced by the Commonwealth was the order of the Fiscal Court
electing defendant supervisor of roads at a salary of $200 per
year, an order of the County Court reciting that that the de-
fendant appear and executed bond as supervisor, that the settle-
ment made with the administrator of the sheriff showed an al-
lowance to defendant as supervisor a claim of $642.70 for teams
on road, and that said claim was approved by the court and
paid to defendant. There is an entire absence of any proof
that defendant ever took the oath of office. Section 4314, Ken-
tucky Statutes, provides that he shall take an oath for the
faithful discharge of his duties and that the taking of the oath
and the execution of the bond shall be *noted on the order book
of the court.* This is wholly a technical prosecution. There is
no effort, to prove and no hint that the money was not earned
or that the county has been defrauded or has suffered any loss.
The claim was a just one and was approved by the court, and
it looks as if there were some motive of somebody demanding a
persecution rather than a prosecution of the defendant.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellee, S. A. Pate, was indicted under section 4332,
Kentucky Statutes, which provides: "It shall be unlawful
for the county judge, any justice of the peace, sheriff or
tax collector, county attorney, or supervisor or assistant
supervisor, or any overseer to become directly or indirect-
ly interested in any contract for working roads or building
or repairing bridges; and it shall be unlawful for either
of said officers or employes to buy or become interested
in any road or bridge order or certificate, or any claim
growing out of such work. Either of said officers or em-
ployes who shall violate this section shall be guilty of a
misdemeanor, and, upon indictment by a grand jury, and

conviction thereof before any court of competent jurisdic
tion, shall be fined for each offense not less than fifty nor
more than three hundred dollars. This section shall be
given in charge to the grand jury by the judge of the cir-
cuit court." Appellee had previously been appointed su
pervisor of roads for Breckinridge county by the county
court, and had qualified by accepting the appointment,
executing the bond, and entering upon the discharge of
the duties of the office. It appears that Breckinridge
county had adopted the "taxation system" of keeping its
roads in repair. The indictment charges, in substance,
the appointment, qualification, and acting of appellee as
road supervisor of Breckinridge county; that within a year
before the finding of the indictment he had unlawfully
and willfully, while holding the office of supervisor of
public roads in Breckinridge county, become interested
in and the beneficiary of a certain road order and claim
growing out of road work in magisterial district No. 1
of Breckinridge county, which order was as follows:  "No.
66.    Breckinridge County, Ky., Nov. 2, 1899.    To the
Treasurer of Breckinridge County:  Pay to the order of S.
A. Pate, six hundred and forty-two and seven one-hun-
dredths dollars for teams on road, and charge same to
road fund of first magisterial district. [Signed]  S. A.
Pate, Supervisor Maj. Dist." The indictment further
charged that the above order was for teams furnished by
said Pate in his own interest for work on road in said dis-
trict of Breckinridge county; that the order was drawn
by Pate payable to himself for work on said road, and he
thereby becoming interested in said order and claim; that
said claim was approved by the county judge of Breckin-
ridge county, and collected by said Pate out of the road
funds of said magisterial district of said county.  A de-

murrer was interposed to the indictment, which we think
was properly overruled by the trial court. The evidence
in behalf of the Commonwealth sustained the charge set
out in the indictment, but, failing to show that appellee
had taken the oath of office as such supervisor, the court
gave the jury a peremptory instruction to find the de-
fendant not guilty, which was done. The court seems to have
proceeded upon the theory that the taking of the oath re-
quired by law was a prerequisite to the investiture of appel-
lee with the title to and legal responsibilities for the duties
of the office. Section 4314, Kentucky Statutes, requiring the
oath, is in these words: "The supervisor shall, at the
next regular term of the county court after his appoint-
ment, execute bond to the Commonwealth, for the benefit
of the county with sureties to be approved by the court
in double the amount of the bridge and road fund, and
shall take an oath for the faithful discharge of his duties.
The taking of the oath and the execution of said bond
shall be noted on the order book of the court. The bond
shall be recorded in the order book," etc. It is assumed
in argument by counsel for appellee that the taking of
the oath was not only a necessary incident to appellee's
induction into office, but that the fact of it must be proven
by the record, and affirmatively shown as part of the
Commonwealth's case; that, unless it was so shown, appel-
lee was a mere usurper of his office, his only offense being
that of usurpation; that the penalties denounced by the
statute under consideration applied only to *de jure*, not
to *de facto*, officers. The statute was enacted to protect
the public by removing from its agent and representative
every possible interest in the character of the public works
under his supervision that could conflict with his public
duty. The Legislature recognized the old truth that

where the interest of the servant and the served came into conflict, the servant can not properly discriminate between his interest and his duty; hence the temptation is sought to be removed. The protection is to the public against those who assume, under right of office, to serve it. A number of cases have been examined holding that the oath to be taken by the officer is merely an incident to the holding of the office, as an additional protection to the public as the most solemn assurance the official can give of his purpose to honestly administer the affairs of his position. In its practical effect it can give no additional weight to the official's obligation to the public. Its violation involves no additional penalty. Of course, if the statute expressly provides that the right to the office should not attach till after the oath was taken, a more serious difficulty would be presented. In this case the record shows the appointment of appellee as supervisor of public roads. He accepted the appointment by executing the bond required by law, and actually took possession of the office, and undertook by virtue of that appointment and qualification to serve the public in that capacity. In Johnston v. Wilson, 2 N. H., 202, cases are cited supporting the doctrine that, "when a person has distinctly admitted or recognized the official capacity of another, he can not afterwards, offer evidence against the validity of his appointment; and, where a person has acted in an official capacity, he himself can not afterwards offer evidence against the validity of his own appointment." And this seems to be the sound doctrine; for one should not be suffered to enjoy the emoluments and benefits of a public office without being subject to the pains and penalties for a breach of its duties. If the oath was a prerequisite to appellee's investiture of the office, his accepting the ap-

pointment, entering upon and engaging in a discharge of its public duties, and enjoying its benefits, in a controversy between third persons, as well as in a controversy between him and third persons, or him and the public, raises the conclusive presumption that he took the prescribed oath where the indulgence of such presumption will tend to protect the rights of such third persons or the public. Judgment reversed, and cause remanded for proceedings consistent herewith.