CASE 82.—PROSECUTION AGAINST W. E. LANE, A JUSTICE
OF THE PEACE, FOR UNLAWFULLY WORKING
HIS TEAMS ON PUBLIC ROAD FOR COMPENSA-
TION.May 17.

## Commonwealth v. Lane

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

From a judgment finding the defendant not guilty
the Commonwealth appeals.   Reversed.

Highways—Contract by Member of Fiscal Court for Work—Ky.
St. 1903, sec. 4332, declaring it unlawful for a justice of the
peace, who by virtue of such office is a member of the fiscal
court, to become directly or indirectly "interested in any
contract for working roads," is violated, where he and his
teams do work on the road by the day under employment
by the road supervisor; it is not necessary that the work
be let by the job, and that he be interested in such contract.

ALLEN W. BARKLEY, County Attorney, for appellant.

JOHN G. LOVETT, N. B. HAYS, ATTORNEY GENERAL AND
C. H. MORRIS of counsel.

### POINTS AND AUTHORITIES.

1.   The inhibition of the law is against a justice of the peace
becoming interested, directly or indirectly, in any contract for
work to be done, or material to be furnished upon the public
roads of the county.

2.   The question here is not one between a member of the
fiscal court and an independent contractor, but between the
county itself and a member of its fiscal court.

3.   It is contended by appellee that working upon the roads
and receiving pay from the county therefor, is not unlawful, be-

cause done in his "individual capacity," and not in his "official capacity." And that while "officially" he is over and above the supervisor, yet that "individually" he can very properly be under him and subject to his orders. It would indeed be a marvelous feat of gmynastics for a magistrate to succeed in demonstrating that he was both over and under the road supervisor at the same time; and it would be a strange sort of official surgery that would permit such magistrate to split himself in twain and call one part "his official" and the other his "individual self." (Comth. v. Pate, 110 Ky. 468; Boyd County v. Arthur, 118 Ky., 932; sec. 4332, Ky. Stat., 1903; sec. 4315, Ky. Stat.; sec. 4335, Ky. Stat.; sec. 1844, Ky. Stat., 1903; sec. 1845, Ky. Stat., 1903; Pulaski County v. Sears, 117, Ky., 249; Daviess County v. Goodwin, 116 Ky., 891.)

R. T. LIGHTFOOT for appellee.

(No brief in the record.)

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

W. E. Lane was indicted in the McCracken circuit court, charged with unlawfully working upon the public roads of McCracken county while holding the office of justice of the peace for the fifth magisterial district. The indictment charges that, while holding such office, and being, by virtue thereof a member of the fiscal court, he worked in person, and also furnished teams to be used in working, upon the public roads, receiving for his own labor $2 per day and $3 per day for each of his teams; that he was paid out of the treasury of McCracken county for this work. On a plea of "not guilty," the case was submitted to the judge of the McCracken circuit court for trial, on an agreed statement of facts. The court adjudged the defendant "not guilty," and discharged him from custody. The Commonwealth appeals.

The agreed statement of facts submitted is as fol-

lows: "It is agreed by the parties that, at the time of the doing of the acts complained of in the indictment, the defendant, W. E. Lane, was the duly elected, qualified, and acting justice of the peace of magisterial district No. 5, in McCracken county, Ky., and that E. B. Johnson was the duly elected, qualified, and acting road supervisor for McCracken county, Ky., and that the fiscal court of McCracken county has heretofore adopted the system of working the public roads of the county by taxation, and that a tax was levied by the fiscal court for that purpose, and that the fiscal court gave said road supervisor authority to employ hands, teams, and tools for the purpose of working the roads of the county. It is further agreed that said E. B. Johnson, while acting as such road supervisor, and while employing men and teams to work on the public roads, employed the defendant, W. E. Lane, at the rate of $2 per day in the same manner he employed other hands to run a road grader, during the months of May, June, July, August, and September, 1906, and that said Lane furnished teams to work to the said grader, for which said supervisor paid to him the price of $3 per day for said teams. It is further agreed that said amounts were paid by said supervisor to the defendant for such services and teams furnished out of the road and bridge fund of Mc-Cracken county, drawing the amounts himself out of the county treasury, and paying the defendant for his labor and also for his teams so furnished. It is further agreed that the fiscal court, by an order entered of record, requires, and required at the times heretofore mentioned, the road supervisor to file his report in writing every three months with the fiscal court, showing the amount of money spent, on what

roads, and to whom and for what paid, which report may be ratified or rejected by said court."

The indictment in this case was drawn under section 4332 of the Kentucky Statutes of 1903, which is as follows: "It shall be unlawful for the county judge, any justice of the peace, sheriff or tax collector, county attorney or supervisor or assistant supervisor, or any overseer, to become directly or indirectly interested in any contract for working roads or building or repairing bridges; and it shall be unlawful for either of said officers or employes to buy or become interested in any road or bridge order or certificate, or any claim growing out of such work. Either of said officers or employes who shall violate this section shall be guilty of a misdemeanor, and, upon indictment by a grand jury, and conviction thereof before any court of competent jurisdiction, shall be fined for each offense not less than fifty nor more than three hundred dollars. This section shall be given in charge to the grand jury by the judge of the circuit court." This case turns upon the construction of the word "contract" in this statute. The statute plainly says that no member of the fiscal court shall be interested directly, or indirectly, or be concerned, in any contract for work to be done or material to be furnished for the county. The word "contract" here means an agreement entered into between the county, on one part, and some person or persons, on the other, for a consideration, to do a certain thing. It may be either verbal or written, and it is immaterial whether it is the one or the other; if it is lawful, it is none the less binding. In this case it appears from the agreed state of facts that the defendant had a contract with the county, by the terms of which he was to receive $2

per day for his own labor and $3 per day for the hire of each team for every day that he worked and that his teams were used. It is true this contract was made with the road supervisor, but the road supervisor is merely the agent of the county for the purpose of looking after the public roads thereof.

It is insisted that the word "contract," as used in this section of the statute, means work let by the job to some independent contractor; and that, before the magistrate could be held guilty of violating section 4332, he would have to be directly interested in the letting of the contract, or in the profits to be made therefrom; that he would not be guilty of any violation of the law, if he and his teams were employed by the independent contractor. To this reasoning we cannot agree. The magistrates compose the fiscal court of the county, and, as such, have charge of the financial affairs of the county. They must pass upon and allow claims against the county, must determine, when claims are presented against the county, whether they are good, and sufficient claims, and of whether or not they should be paid. The supervisor of roads is required, from time to time, to render an account of his stewardship to the fiscal court, and to present in this account his claims for money expended in looking after the roads. The magistrate in this case, being a member of the fiscal court, helped elect the road supervisor, and when he came to settle his accounts this same magistrate, as a member of the fiscal court, would sit and pass upon the validity, not only of his own, but such other claims as his employer, the road supervisor, might have to present against the county. There is no intimation in this case that either the road supervisor or the magistrate has been guilty of the slightest wrongdoing, still defendant's

construction of this statute, if correct, extends an
invitation to, and opens up the way for, designing
and corrupt officials to loot the public treasury. All
that would be necessary to be done would be for a
magistrate to make a deal with some one as road
supervisor, whereby, in consideration of his being
employed in person and having his teams employed
to work upon the public roads, this person so selected
should be elected supervisor of public roads, with an
understanding in advance that the magistrate should
practically name the price which he should receive
and which should be paid to him for the use of his
teams, and with the further knowledge and under-
standing that, when the claims so made were pre-
sented, he, himself, would be present clothed with
power to see that they were allowed. It is urged that
in all such cases where a member of the fiscal court
had rendered service, when his claim was presented
by the road supervisor, the magistrate would not sit
and pass in judgment upon his own claim; but sup-
pose we go farther, and say that each member of the
fiscal court had been thus employed and paid by the
road supervisor for services rendered the county, and
that no other hands had been so employed, who, then,
would settle with the supervisor? The law says he
shall settle with the fiscal court. Where each member
thereof has a personal interest in the settlement, it
will not do to say that each might pass upon the
claims of all the others, and have them, in turn, pass
upon his; yet this is the only way in which the claims
could be considered and allowed at all, if each did
not sit and pass upon his own claim, as well as the
others. The practical effect of such a condition
would be that the fiscal court would be paying them-
selves for services which they had employed them-

selves to render to the county. Surely, under such a condition, they could not say they were not directly interested in the contract for which they were receiving this pay. Again, suppose that the road supervisor, thus employed, should be corrupt, and should enter into a bargain with the members of the fiscal court, by the terms of which he would agree to pay them for twice the number of day's work which they had actually done, who would protect the county's interest, and in what way would it be safeguarded? When viewed in this light it is not a difficult matter to see that it was just such cases as this that the statute in question was passed to meet.

It is insisted by appellee that this interpretation of the statute would work a great hardship upon him, as it would entirely prevent him from working upon the public roads of the county. The salary attached to the office of justice of the peace is small indeed, and it seems to us that, if there is much profit to be derived from working upon the public roads, one would be justified in resigning the office of magistrate in order that he might not be deprived of an opportunity to do this work. It may be, as is suggested by appellant, that a magistrate may retain his position for the purpose of securing for himself this employment, which, but for his position, he could not get. If this is true, it affords an additional reason why the statute should be strictly enforced. It is further insisted by appellee that to work upon the public roads, as he has, is not unlawful, because it is done in his individual capacity, and not in his official capacity, and that, while officially it is his duty to superintend the work of the road supervisor without violating the statute. We fear that even a justice of the peace would find it difficult to draw so fine a

distinction between himself, as justice officially, and citizen individually, when contracting with the road supervisor, in the one instance, and being contracted with, in the other. As a matter of fact, he occupies no such dual position, and treating the road supervisor as the agent of the county, or rather, as the agent of the fiscal court for the purpose of looking after the public roads, the justice is, in reality, through the supervisor, employing himself to work for the county.

The case of Commonwealth v. Pate, 110 Ky., 468, 61 S. W., 1009, 22 Ky. Law Rep., 1890, is in many respects similar to the case at bar. There the defendant was the road supervisor, and as such he used his own teams upon the public roads and presented a bill for same to the fiscal court, which was paid, and later he was indicted, and a demurrer to the indictment was sustained. Upon appeal to this court, Judge O'Rear, speaking for the court, said: "The statute was enacted to protect the public by removing from its agent and representative every possible interest in the character of the public works under his supervision that could conflict with his public duty. The legislature recognized the old truth that, where the interest of the servant and the served came into conflict, the servant cannot properly discriminate between his interest and his duty. Hence the temptation is sought to be removed. The protection is to the public against those who assume, under right of office, to serve it."

In the case of Boyd County v. Arthur et al., 118 Ky., 932, 82 S. W., 613, 26 Ky. Law Rep., 906, the fiscal court had made an order allowing each member thereof $3 per day for each day's work done in directing and supervising the work in

their respective districts.    In passing upon the validity of this order, Judge Hobson, speaking for the court, said: "Section 4332, Ky. Stats., 1903, authorizes the fiscal court to appoint a supervisor of roads in and for the county. By section 4315 the fiscal court is to oversee the supervisor, and by section 4335 he is to report to the county judge or some magistrate. The duties required of the supervisor are to be exercised under the supervision of the fiscal court. The statute does not contemplate that a member of the fiscal court should be supervisor, much less that the county should have as many supervisors as there are magistrates; each being supervisor in his own district. By section 1844, Ky. Stats., 1903, no member of the fiscal court shall be interested, directly or indirectly, or be concerned, in any contract for work to be done or material to be furnished for the county, or any district thereof, nor purchase, nor be interested in any claim against the county or state. The members of the fiscal court are the representatives of the county, charged with the duty of protecting its interests. They are allowed to appoint a supervisor, and are required to see that the supervisor lives up to the law. The interests of the county might seriously suffer if the person who is by law required to protect its interests as between it and the supervisor was himself the supervisor—or might well be added, was in the employ and under the control of the supervisor." Again: "There is no principle better settled than that a trustee will not be allowed to occupy a dual position, and that, where he is charged with the protection of his cestui que trust, he cannot place himself in a position where his personal interests may be antagonistic to the interests of his cestui que trust. If he does this, it is a breach

of his trust. The statutes we have referred to have the same end in view when they forbid the members of the fiscal court being interested in any contract or work and in providing that they may appoint one supervisor for the whole county and exercise supervision over him.''

In each of these cases the members of the fiscal court were not dealing with contracts or contract work, as interpreted by defendant. In one case they were attempting to pay the supervisor for the use of his teams for so many days at so much per day, and in the other they were attempting to pay themselves for their services, by the day, rendered in looking after the public roads. In the case at bar, they are attempting to pay one of their members for his services and the use of his teams for so many days at so much per day. The cases are almost identical; the difference being a detail, not in principle. Under the authority of these cases, we are of opinion that appellee, in accepting employment in the manner in which he did, under the supervisor of roads of his county, while he was a member of the fiscal court thereof, clearly violated the provisions of section 4332 of the Kentucky Statutes of 1903.

For this reason, the judgment of the lower court is reversed, and case remanded for further proceedings consistent with this opinion.

NUNN, J. (dissenting). In my opinion the court has misconstrued the language used and the evil intended to be remedied by section 4332 of the Kentucky Statutes of 1903. It is a matter of history that, prior to the enactment of this statute, the fiscal court usually appointed some member of the court to let and supervise contracts for the construction and

repair of bridges and for working the roads, such as making fills and constructing culverts in low places to permit the water to pass under the road, cutting down or through hills, blasting rock, and otherwise improving the roads. Usually each member of the court was assigned his district for the letting and supervising of such contracts. In many counties of the state this system of letting contracts for working the roads had become burdensome on the taxpayer. In some instances the members of the court would let the contract to themselves, or to or in the name of some friend, and become interested in the contract, at exorbitant prices. The General Assembly enacted section 4332 to break up this pernicious system, as evidenced by the use of this language, "to become directly or indirectly interested in any contract for working the roads or building or repairing bridges." The roads in this case at bar were not being worked under a contract in the sense used in the statute. They were worked under the supervisor who employed hands and teams to work thereon under section 4315. These hands and teams were employed in the open, there was nothing secret about it, and appellee in this case had no interest directly or indirectly in any contract to work a road in the meaning of the statute. His only pecuniary interest in the matter was in receiving his pay for labor, which he had agreed to and did perform in the open and in competition with all other citizens of the county. In my opinion the members of the legislature, when they enacted this statute, did not intend to prevent or prohibit a member of the fiscal court from publicly engaging himself or teams in the construction of roads or bridges when done in competition with all citizens of the county. If such had been the intention,

it ought to have been embraced in the statute, for it would have left no room for supposition and construction to have said, "It shall be unlawful for any county judge, justice of the peace," etc., "to become interested directly or indirectly in any contract for working roads or building bridges or repairing bridges," and then have added, "or suffer themselves or teams to be employed for such purposes." I object to the extension of the statute so as to convict a person of an offense who was not conscious at the time of committing an offense. It appears from the agreed facts in this case that Lane, when he was performing the work on the roads, had no idea that he was violating the law and in my opinion the proper construction of the section referred to does not cover his case and make him an offender of the law.

For these reasons, I dissent from the opinion of the court.