## Osborne v. Commonwealth.

Jan. 14, 1944.

588

J. B. Wall, J. B. Rose, J. C. Baker, and W. L. Rose for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellant and Green B. Turner, election officers, were jointly indicted for making, pursuant to a conspiracy, a false and fraudulent poll book (one of the offenses denounced as "forgery" by KS sec. 1581) by feloniously forging and writing the names of voters on the stubs of the election ballots used in the local option election held on March 28, 1942, in Verda voting precinct No. 7b in Harlan County. Tried separately,

the appellant was convicted, and sentenced to two years' confinement in the penitentiary. On this appeal he urges, among other grounds for reversal, that the verdict of the jury is not sustained by the evidence; and that contention we shall dispose of first, since the facts disclosed by the testimony necessarily have a bearing on the proper disposition to be made of appellant's additional contentions, which are, that the verdict was contrary to law; that the court admitted incompetent testimony, refused to admit competent testimony, and erred in his instructions to the jury, and in summoning a jury from Whitley County to try the case.

A comprehensive statement of the frauds perpetrated in the local option election held in Harlan County on March 28, 1942, may be found in our opinion in the case of Jackson et al. v. Bolt, 292 Ky. 503, 166 S. W. (2d) 831, 833, holding the election valid but nullifying the result. Therein we quoted with approval the following excerpt from the opinion of the lower court: "The methods employed by the perpetrators of the fraud were as bold as they were clumsy, and do not possess either the charm of novelty nor the virtue of originality."

Referring specifically to Verda Precinct No. 7b, we said: "None of the ballot boxes and none of the election officers representing the forces opposed to the adoption of local option appeared at the designated voting place, and though an extensive search was made throughout the day, no ballot box and no election officer representing the wet forces was found or located and no person in the precinct was able to cast his vote. After the time for closing the polls had passed, the ballot box was returned to the county clerk's office. 718 ballots had been sent to Verda Precinct No. 7B. When the ballot box was opened it was found that all of the ballots had been removed from the books. Four were not found, but the other 714 were in the box, 713 marked 'No,' none marked 'Yes,' and one spoiled."

In the case at bar it was shown that appellant was sheriff of the election, and that Turner, who did not testify, was one of the judges. While no one testified that they saw appellant or Turner write the names of the alleged voters on the stubs of the ballots, it was shown that the ballot boxes had been delivered to Turner on the eve of the election and returned to the office of

the county court clerk by appellant and his wife after the time set for the closing of the polls on the day of the election. According to numerous witnesses, the school house, at which the voting in the precinct was to have been conducted, was locked when they arrived there in the morning and remained locked through the entire day, and neither appellant nor Turner visited the scene at any time. Moreover, three women, residents of the precinct, testified that between 11 A. M. and noon, they saw appellant accompanied by his wife and a man with a sack, leave his home carrying something resembling a ballot box partially enclosed in a pasteboard box; and that appellant and his companions put the box and the sack in a waiting taxicab and drove off toward Harlan. Appellant, corroborated by his wife, mother-in-law, and the taxicab driver, testified that the pasteboard box contained chickens which his brother desired to take home with him, and denied that he had seen the ballot box on the day of the election, claiming that when he called at Turner's house on the morning of the election after finding the door of the school house locked, Turner, to whom the box had been delivered, informed him that "somebody had taken the ballot box." He also denied having seen the ballots or the books in which the stubs were bound, or that he had anything whatsoever to do with writing the names on the stubs, or the return of the ballot box to the County Court Clerk's office. But the jury had the right to believe from the testimony that the box and ballots were in his possession during the day of the election. Moreover, they had before them the book containing the bound stubs of the ballots and samples of appellant's handwriting. His indifference to the performance of his duties as sheriff of the election, if his own testimony is to be believed, and the contradiction of the testimony of some of his witnesses that the pasteboard box or boxes contained chickens and not a ballot box, fully warranted the jury in disbelieving his entire story. Accepting as true all of the testimony for the Commonwealth, only the salient features of which we have attempted to recite, the conclusion was warranted that the appellant was cognizant of, and at least participated in, the commission of the fraud charged against him in the indictment. Although much of the evidence on which we have based the foregoing statement was circumstantial, some of it was direct, and since the jury was the

sole judge of the credibility of the witnesses, we cannot say that the verdict is not sustained by the evidence.

The contention that the verdict of the jury is contrary to law is predicated on the fact that there was no testimony introduced showing that appellant had been sworn as an election officer, or that he had acted in that capacity. However, he had been appointed sheriff of the election by the election commissioners, and there was testimony indicating that he had accepted pay for his services. According to his own testimony, he attempted to act as an officer of the election, and, as before stated, if the testimony of the county court clerk is credible, returned the ballot box to the office of that official after the time set for the closing of the polls. At least, he was a de facto officer, and, as such, fully subject to the penalties prescribed for offenses committed by de jure officers. Commonwealth v. Pate, 110 Ky. 468, 61 S. W. 1009.

The allegedly incompetent evidence of which appellant complains, consisted in part of statements of numerous residents of the precinct that no ballots had been issued to them, and that they had not voted in the election, which statements were made in response to the question, whether, if the records showed that ballots had been issued to them, they had, in fact, been issued. It is also asserted that the testimony of the county court clerk relative to the return of the ballot box by appellant and his wife was incompetent because she was permitted to refresh her recollection by referring to her testimony in the civil action. No authorities are cited in support of appellant's objections to the testimony outlined, and our study of the record convinces us that if the court erred in permitting the questions to be answered, it was because of their phraseology, not their substance.

The testimony for appellant, which the court rejected, consisted of the offered statements of deputy sheriffs and others that less than the requisite number of posters advertising the election had actually been posted. If it should be assumed that the failure to post the number of advertisements required by the statute invalidated the election, as contended by appellant, it does not follow that he would be immune to prosecution for the offenses committed by him while assuming to act as election officer. The statute, for the violation of which appellant was indicted, refers to "an election,"

and, considering the purpose which the Legislature had in view, we construe these words to mean, an election authorized by law and conducted under the forms of law, and not exclusively an election which may not subsequently be adjudged void because of an omission or breach of duty by those required to call, advertise, or conduct it. In any event, we are convinced that it was not the legislative intent that an election officer charged with a criminal offense committed in his capacity as such should be permitted to prove an election previously held valid by this court, to be, in fact, void, and escape punishment by showing that other persons had failed to perform acts essential to its validity. Since in the case of Jackson et al. v. Bolt, supra, we expressly held that the election in question was not void as alleged by the contestees as an alternative to their denial that the contestants had received a majority of the votes, it is obvious that if our views of the legislative intent, as announced above, are correct, it is unnecessary to further discuss appellant's contention that the court erred in rejecting the proffered testimony.

Appellant's complaint of the instructions is that the court refused to submit for the jury's determination the question whether the election had been sufficiently advertised by the posting of notices to render it valid, and its refusal to direct appellant's acquittal in the event the jury found that the election had not been so advertised. What we have heretofore said relative to the propriety of the court's ruling rejecting testimony on this subject is a sufficient answer to the contention that the instructions were defective.

Appellant's final contention that the court erred in summoning a jury from Whitley County to try the case is predicated upon the fact that the court made no actual effort to impanel a jury in Harlan County where the prosecution was pending, and upon the insistence that in any event the court was not authorized to summon a jury from other than an adjoining county. It is true that Section 194 of the Criminal Code of Practice requires that the court be satisfied that it would be impracticable to obtain an unbiased jury locally "after having made a fair effort, in good faith" to do so before summoning jurors from "some adjoining county," and that Whitley county does not adjoin Harlan county within the strict definition of that word. But we have several times held that it is not necessary that the court,

in order to obtain the requisite authority to summon jurors outside the county, must actually attempt to impanel a local jury if he has unsuccessfully attempted to do so on a previous trial of the accused or another person indicted for the same offense. Benson v. Commonwealth, 249 Ky. 328, 60 S. W. (2d) 941; Powell et al. v. Commonwealth, 276 Ky. 234, 123 S. W. (2d) 279. See, also, Fannon v. Commonwealth, 295 Ky. 817, 175 S. W. (2d) 531. In short, the court is not required to make an effort which the facts, as disclosed by the record, indicate would have been in vain.

In the case at bar the motion of the Commonwealth that the court summon a jury from another county recited the fact that the court had made a "fair effort" to procure a jury in a similar case growing out of the same charges of fraud in the conduct of the same election. The motion was supported by the affidavit of the pro tem. Commonwealth's attorney, setting forth the difficulties encountered in procuring a jury for the trial of the case referred to, and the affidavits of numerous residents of Harlan County showing the conditions there existing which would render the procurement of an impartial jury impossible. In the order sustaining the Commonwealth's motion, the court recited that in its opinion "it would be impossible to secure a fair and impartial jury in Harlan County that can agree on a verdict." It follows from our opinions in the cases cited that the court was authorized to exercise the power conferred upon him by the Code provision, supra.

This leaves for consideration only the question, whether the court committed a reversible error in summoning the jurors from a county which was not contiguous to Harlan County. In Webster's New International Dictionary, Second Edition, among the definitions of "adjoin," is the following: "Sometimes incorrectly, to be near or in proximity to."

And we are inclined to the belief that it was in this sense that the word was used by the framers of the Code section referred to. Otherwise, it would seem that the very purpose of the enactment would often be defeated, as it is frequently the case that the conditions which render it impossible to obtain an unbiased jury in the county where the prosecution is pending, also exist in the counties immediately surrounding it. It is worthy of note that the statute authorizing a change of

venue, which more materially affects the rights of the accused (KRS 452.210, KS sec. 1109), expressly provides that if the judge is satisfied that a fair trial cannot be had in an adjacent county, he may order the trial to be held in the most convenient county in which a fair trial can be had; from which it would seem manifest that the main purpose of the Legislature in providing for the procurement of a jury from an "adjoining county" when an impartial local jury cannot be obtained was to save the Commonwealth the expense of transporting prospective jurors an unnecessary distance. Furthermore, though the exact contention made here does not appear to have been pressed by the accused, this court, in the Benson case, supra, expressly held that in a prosecution pending in Harlan County it was not improper to summon a jury from Woodford County, which not only does not adjoin Harlan County, but is further removed from it than Whitley. Said the court (249 Ky. 328, 60 S. W. (2d) 943). "The so ordering of the jury from Woodford county, in the circumstances, was not only not an abuse of discretion, but a discharge of a duty owing to both the accused and the commonwealth."

On the whole case, we are satisfied that no error was committed by the trial court prejudicial to appellant's substantial rights.

Judgment affirmed.

Whole Court sitting.