## BEACH v. COMMONWEALTH.

Court of Appeals of Kentucky.
Feb. 22, 1952.

**588**

---

William E. Wall, J. B. Carter, George E. Reams, all of Harlan, for appellant.

A. E. Funk, Atty. Gen., Walter C. Herdman, Asst. Atty. Gen., for appellee.

MOREMEN, Justice.

Appellant, Claude Beach, was convicted of the murder of Avery Hensley and sentenced to life imprisonment.

At one time Beach and Hensley had been friends but differences had developed between them some weeks before the shooting. Police had conducted a raid at a place of business belonging to deceased and had found about seven cases of whiskey and fourteen cases of beer. Hensley accused the appellant of informing the police, and told the chief of police, and others, that he would kill Beach when he saw him. These threats were carried to appellant.

At about 4 o'clock in the afternoon of the 24th day of April, 1951, appellant came to a restaurant known as "Crystal Kitchen" in Harlan, and entered. A short time later the deceased, Avery Hensley, drove into a taxi parking lot adjacent to the restaurant; with him were his stepson, Joe Hensley, a man about 25 years of age, and Don Harvill, who drove a taxi for deceased. Deceased took a position in front of the restaurant where appellant saw him. There is considerable testimony that he remained at or near the restaurant until the shooting took place around 6:30 p. m. Appellant testified that he started to leave the kitchen by the rear door but Avery Hensley came around the building. Appellant testified that he called the police one time, called his wife, and then telephoned his brother, Wheeler Beach, to come and get him. When his brother and a nephew arrived, he walked out of the store. He testified that when he walked by deceased, the deceased cursed him and drew his pistol; that he struck the deceased on his arm, knocking his pistol down, when the deceased fired one shot; and that he drew his own pistol, fired six shots as fast as he could pull the trigger, and then turned and ran away. The Commonwealth introduced evidence to show that appellant shot the deceased in the back with the first shot and that Hensley never committed any threatening act before the assault by appellant.

Appellant urges that the judgment be reversed because: (1) the verdict is against the law and palpably and flagrantly against the evidence and the result of passion and prejudice as shown by the fact that the jury was in the jury room only eight to ten minutes before returning a verdict of guilty; (2) the court erred in sending to Letcher County for a jury without first making a fair effort in good faith to obtain a jury from Harlan County; and (3) the court erred in overruling defendant's motion to discharge the entire panel which had been summoned from Letcher County.

Appellant first complains that the verdict is against the law. A verdict is contrary to law only when it is contrary to instructions, whether right or wrong, and neither error in the instructions given nor failure of the jury to be guided by them has been suggested by appellant.

Malone's Ex'x v. Chesapeake & O. R. Co., 249 Ky. 832, 61 S.W.2d 876. He complains that the verdict is palpably and flagrantly against the evidence. This is not a case where the evidence is not in dispute. Appellant claimed that he was afraid of deceased, yet he admitted he did not ask any peace officer to come to his help except the one time when he called the chief and did not reach him; instead, by telephone call, he summoned his brother and nephew who were armed, and then he finally walked out of the kitchen with his nephew and the shooting began. Appellant stated that the deceased was the aggressor and he grabbed his arm as he pulled a gun and the gun was discharged. However, other witnesses give a different version of the occurrence. A local merchant named Gene Cornett, who had the best vantage point from across the street, testified that when he first saw them they were standing face to face and Beach had his hand on Avery's shoulder; that Beach jumped back and started shooting. He stated that after Avery fell, Joe Hensley ran up to the body and took Avery's gun out of his belt or holster, and ran to the corner. There was other testimony which supports the Commonwealth's case. The jury were presented with the problem of believing one set of witnesses or the other and they chose to accept the Commonwealth's theory of the case.

The fact that the jury returned a verdict in about eight minutes after having the case submitted to them does not indicate to us that Beach did not receive a fair trial when the issues of fact were so clearly drawn. It is true that a verdict should be the result of dispassionate consideration and the jury, if necessary, should deliberate patiently until they reach a proper conclusion concerning the issues submitted to them. Yet where the law does not positively prescribe the length of time a jury shall spend in deliberation, the courts will not apply an arbitrary rule based upon the limits of time. 64 C.J., Trial, § 808, and Urquhart v. Durham & S. C. R. Co., 156 N.C. 581, 72 S.E. 630. The facts in the case at bar were not involved nor difficult and we are not pre-

pared to say that the jury did not spend sufficient time in deliberation.

Appellant next complains that the court erred in sending to Letcher County for a jury without first making an effort in good faith to obtain a jury from Harlan County.

The Commonwealth filed a petition for change of venue in which it was charged that: On the same night on which Avery Hensley was killed, and within a few hours thereafter, Joe Hensley, an eyewitness and stepson of Avery Hensley, was shot and killed on the same street; Dock Nantz, Charles Wade and Ray Smith were indicted in Harlan County for this murder; these killings were so interlocked and entwined that there was a community of interest between all five defendants; the killings had had widespread publicity through newspapers and radio stations and it was impossible to obtain a jury in Harlan County that would not have preconceived opinions; the Hensleys were a large, influential family in both political and business circles, and for these reasons it would be impossible for either the Commonwealth or defendant to receive a fair trial. Proof was introduced before the court in support of this petition. However, after a conference, counsel for both sides announced that they had agreed that the motion for a change of venue should be withdrawn and that the court should send to another county for a jury.

Appellant contends that regardless of the foregoing proceedings, the court should first have attempted to obtain a jury free of bias in the county wherein the prosecution was pending before the requirements of Section 194 of the Criminal Code of Practice are satisfied, and cites, among other authorities: Osborne v. Commonwealth, 296 Ky. 587, 177 S.W.2d 896; Marion v. Commonwealth, 269 Ky. 729, 108 S.W.2d 721; and Commonwealth v. Kelly, 266 Ky. 662, 99 S.W.2d 774. In the Osborne case [296 Ky. 587, 177 S.W.2d 899] it was held that a court need not impanel a local jury before summoning jurors outside the county if the court has unsuccessfully attempted to obtain an unbiased local jury on a previous trial of the accused or another

person indicted for the same offense, and said: "In short, the court is not required to make an effort which the facts, as disclosed by the record, indicate would have been in vain." In the Marion case [269 Ky. 729, 108 S.W.2d 724], a stipulation by defendant and Commonwealth that the jury be summoned from an adjoining county because of prejudices existing in the county in which the prosecution was pending was held valid, and in disposing of the contention that the provisions of Section 194 of the Criminal Code of Practice may not be waived, said: "This is not any constitutional or inalienable right of the defendant, but is a mere matter of procedure prescribed by the Legislature. If in lieu of presenting evidence the parties agree as to what that evidence would establish and agree further as to its effect and as to what ought to be done, there is no reason why the agreement should not be valid. And if valid it continues to be binding." In the Kelly case [266 Ky. 662, 99 S.W.2d 775], it was said: "If in lieu of hearing evidence the parties agree that the grounds do exist, we perceive no reason why the court may not so adjudge."

In the case at bar, after it had been determined by evidence heard by the court and by agreement of the parties that an unbiased jury could not have been obtained in Harlan County, it was not incumbent upon the court to do a futile thing. In Woods v. Commonwealth, 282 Ky. 596, 139 S.W.2d 439, 443, it was said: "There is no showing as to how appellant was prejudiced by being tried by a jury from another county. As we read affidavits for continuance, the court would have been justified in so procuring a jury, or if motion to do so had been made, in changing the venue. However, appellant is precluded from complaining on the first point, since the attorney for the commonwealth and the defendant agreed that 'an order should be entered directing the summoning of a jury from another county to try these cases, except Perry County.' "

Appellant finally insists that the court erred in failing to discharge the entire panel obtained from Letcher County and in permitting certain persons, who were alleged to have been improperly summoned, to serve on the jury. A few days after the court had directed C. C. Ball, the sheriff of Harlan County, to obtain a jury in Letcher County, appellant filed an affidavit in which it was stated that Fielding Hensley, a first cousin of Avery Hensley, the deceased, left Harlan County and arrived in Letcher County before the sheriff had arrived there and that when the sheriff arrived, he contacted one Kenneth E. Combs, who is a brother-in-law of Fielding Hensley and also jailer of Letcher County, and that Combs assisted sheriff C. C. Ball in summoning the jury. While this affidavit makes no direct charge that any improper influence was exerted in connection with the summoning of the venire, the court heard evidence in connection with appellant's motion and affidavit. Fielding Hensley stated that he went immediately to Letcher County in order to employ a lawyer which he had the right to do. McElwain v. Commonwealth, 146 Ky. 104, 142 S.W. 234. The sheriff denied emphatically that any influence was exerted upon him by anyone and that when he arrived in Letcher County he went straight to the sheriff's office and the only ones who aided him in summoning the jurors were the sheriff and his deputy. The proof taken before the court shows that appellant's motion to dismiss the jury was without merit and the trial court properly overruled it.

Upon the voir dire examination it was shown that a number of jurors summoned from Letcher County were not actually summoned by the sheriff of Harlan County, as directed by the circuit court, but were instead summoned by the sheriff of Letcher County and his deputy. Several men who fell in this category were accepted for jury service. However, appellant, in the examination of the panel brought these facts to light but raised no objection to their service as jurors and made no motion to discharge them.

It was not until after the verdict was returned in this case that appellant objected to the qualification of these jurors. In the case of Higgins v. Commonwealth, 287 Ky. 767, 155 S.W.2d 209, this court quoted with approval the following

rule from Am.Jur.: "The general rule is that objection to a juror because of his disqualification is waived by a failure to object to such juror until after verdict, whether in a civil or a criminal case, and even with respect to a statutory qualification. Even in a capital case the disqualification of a juror is generally unavailable after verdict. * * * In some cases a waiver of the objection to a juror results from failure to raise it before verdict, even though the cause of objection does not become known until after verdict. (State v. Pickett, 103 Iowa 714, 73 N.W. 346, 39 L.R.A. 302)."

See also Bain v. Commonwealth, 283 Ky. 18, 140 S.W.2d 612.

Wherefore the judgment is affirmed.