MARY W. O'CONNELL *et al. vs.* JAMES C. FORD.
APRIL 21, 1937.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CONDON, J. This is an action of trespass on the case for negligence brought by these plaintiffs under sec. 14, chapter 333 of the general laws, 1923, which provides for recovery for death by wrongful act. The trial of the case in the superior court resulted in a verdict for the defendant. A motion for a new trial, based on the usual grounds, was made by the plaintiffs and denied by the trial justice. To this denial of their motion, the plaintiffs excepted and have duly prosecuted their bill of exceptions to this court.

The plaintiffs set out nine exceptions in their bill but they have expressly waived exceptions one, two and three. The remaining six exceptions all relate to the denial of the motion for a new trial and may, therefore, be considered together as one, although a different ground of error is alleged in each.

This case was fully tried before a jury who received the law from the trial justice without objection on the part of the plaintiffs. The law of the case, therefore, is not open to question before us. The only question here is whether or not the verdict of the jury is against the law, as given to them, or against the weight of the evidence or against both the law and the evidence. Whether the verdict was the result of prejudice or of failure on the part of the jury conscientiously and impartially to consider and weigh the evidence are questions more or less involved in the question first-above stated.

This case comes to us after the trial justice has approved the jury's verdict. Under the rule first laid down in *Wilcox v. Rhode Island Co.*, 29 R. I. 292, this court held that where the evidence was conflicting and the trial justice had, in the exercise of his superior and more comprehensive judgment, carefully weighed the evidence and had thereafter approved the jury's verdict, it ordinarily would not interfere. The reasons underlying the establishment of this rule for the guidance of the court in the exercise of its appellate jurisdiction are clearly set forth in the *Wilcox* case and were restated very soon thereafter in two cases

applying the rule where the trial justice had disapproved the jury's verdict and had granted a new trial. *Noland* v. *Rhode Island Co.,* 30 R. I. 246; *McMahon* v. *Rhode Island Co.,* 32 R. I. 237.

The rule then became well established but later in the case of *Surmeian* v. *Simons,* 42 R. I. 334, reaffirming the rule as laid down in the *Wilcox* case, the court pointed out that it was not, under this rule, bound absolutely by the decision of the trial justice. Speaking through *Sweetland, C. J.,* the court said: "We have not held that the finding of a trial judge upon the validity of a jury's verdict was binding upon us but we will for ourselves examine the transcript of evidence. If from such examination it appears to us that the determination of the trial judge upon the weight of the evidence is clearly wrong, or that his decision was not made upon conflicting testimony but was based upon a misconception of the evidence in the case we will not approve his decision. In the ordinary case, however, where such justice has approved or set aside a verdict in accordance with his view as to the value of evidence clearly conflicting we will regard such determination as of great persuasive force in appellate proceedings before us."

The case at bar is, in the respect above alluded to, an ordinary case and comes within the rule laid down in the *Wilcox* case. We have examined the transcript of the evidence and we find no warrant under this rule as restated in *Surmeian* v. *Simons, supra,* for substituting our judgment for that of the trial justice on the motion for a new trial.

The evidence discloses a clear conflict upon the material issues of the case. It also discloses a serious issue of the credibility of several of the witnesses. The deceased met his death while walking along a public highway in broad daylight. No one testified as to how he met his death. The defendant's truck driver testified he never saw the deceased at any time on the highway. Manuel Bettincourt, the driver of a truck following the defendant's truck, testified that he saw what he thought was a bundle of rags fall from

the side of the defendant's truck at the rear, but when he approached the place in the highway, where he saw the object fall, he saw a man lying there. This was the deceased, but Bettincourt did not see him until he passed him lying in the highway.

Mrs. Cassidy, a friend and neighbor of the deceased, testified that she looked out of the window of her house and saw the deceased, with a loaf of bread under his arm, walking about twenty feet in front of defendant's truck. She did not see anything more, because she left the window to go to another part of her house.

Joseph E. O'Connell, son in law of the deceased and husband of the plaintiff Mary W. O'Connell, testified that the defendant's driver said, in response to an inquiry, as to who hit the deceased, which he, O'Connell, addressed to the state police officer, "Well, I hit him but I didn't see anybody." The defendant's driver positively denied this statement. The state police officer testified he did not hear O'Connell ask such a question and that he did not hear defendant's driver make the statement attributed to him by O'Connell.

Roswell A. Fairman, an investigator for the state board of public roads, testified that he came upon the deceased lying face downward in the highway, that he turned the deceased over and recognized him as George Charlton, a neighbor, with whom he was acquainted for the past twenty-five years or more; that he asked Charlton if he had been hit by an automobile and that Charlton replied: "No, I fell down." and "Take me home, I only live two houses from here." Fairman further testified that later, after a state police officer arrived on the scene and was trying to make Charlton comfortable, he again asked: "What happened, George? Did you get struck by an automobile?" and that the deceased said: "No, I fell down." The state police officer testified that the deceased did not say anything about the accident to him or in his hearing.

There were several other instances of contradictory testi-

mony but those above referred to will suffice to indicate the problem confronting the jury when they retired to consider their verdict. Plainly the credibility of the witnesses was a very serious issue in the case. Some of these witnesses, as the police officer, Fairman and Bettincourt, were absolutely disinterested. The other witnesses were to a greater or less degree interested. The jury were entitled to take this fact into consideration in reaching their verdict, and doubtless they did. As to what testimony was most worthy of belief is a question which we think has been answered by their verdict. There was clearly evidence upon which the jury could reasonably base a verdict for the defendant, and upon which the trial justice could properly sustain such a verdict.

The plaintiffs complain that the jury, because it returned its verdict within ten minutes after retiring to the jury room, must necessarily have failed to consider the evidence conscientiously and impartially and that their verdict is the result of prejudice. This argument was also made to the trial justice on the motion for a new trial. In disposing of this motion, he said in his rescript: "But nothing was brought to the attention of the court during the hearing on this motion which would indicate that the jury was prejudiced or that it failed to give proper and faithful consideration to plaintiffs' claim." We cannot say that merely because the jury returned a speedy verdict it was actuated by prejudice. On its face there was nothing of a complicated character in the evidence requiring unusual time to consider. The jury might well have come at once to a conclusion that on all the testimony they could not say that the plaintiffs had proved their case by a preponderance of the evidence.

The plaintiffs, however, contend further that the jury were misled into giving undue weight to the fact that the deceased was walking on the highway contrary to the provisions of public laws, 1930, chapter 1582, and also that the trial justice contributed to the act of misleading them by making this fact or circumstance more important than it

deserved in his charge. If the charge in this respect was prejudicial to the plaintiffs' case, it is too late for them to object now, having failed to except thereto at the proper time. The plaintiffs concede this but argue that the brief time which the jury took to consider their verdict is indicative of undue weight given by the jury to this circumstance.

The plaintiffs' contention that the jury were misled by the reference to the statute in the charge, to the extent that they may have hastily reached their verdict on the ground that the deceased was violating the statute and for that reason was guilty of contributory negligence, is without merit. The evidence is undisputed that the deceased was walking on the side of the highway contrary to the provisions of the statute. The jury was entitled to consider this evidence along with other circumstances as to whether the plaintiffs had proved by a fair preponderance of the evidence that the deceased was free from contributory negligence. We do not know on what ground the jury rested its verdict for the defendant. It may have found that the defendant was not negligent or that the plaintiffs' deceased was guilty of contributory negligence. In this action either ground would have been sufficient.

The plaintiffs contend that the verdict being a general one, the jury is presumed to have found every material and issuable fact in favor of the defendant, and cites two Rhode Island cases, *Carroll* v. *Graham,* 8 R. I. 242, and *Burdick* v. *Burdick,* 15 R. I. 165. These cases do not support the proposition as the plaintiffs state it. In each of the cited cases the verdict of the jury was for the plaintiff.

In the *Carroll* case the action was assumpsit and the defendant's pleas were: (1) That he did not promise; (2) that he did not promise within six years. The court correctly held, under these circumstances, that in general terms, the findings include both issues. The reason, as the court said, is that: "The jury would not have found damages for the plaintiff, unless they had found not only that the defendant promised, but that he promised within six years."

In the *Burdick* case the action was trespass and eject-ment. The defendant pleaded freehold, statute of posses-sion, easement and not guilty. The case was tried on all issues and the verdict was for the plaintiff. Following the case of *Carroll* v. *Graham, supra,* the court held that the verdict, though general, was a verdict on all the issues for the plaintiff, and it then stated the law to be as follows: "The doctrine is that the courts, in construing a verdict, look rather to the substance than the form, and that a ver-dict for the plaintiff which could not have been properly found for him without finding all the issues in his favor, will be regarded as a verdict for him on all the issues."

It is obvious that these cases do not support the plain-tiffs' contention. The verdict here is for the defendant and may be founded, as said above, either on the ground that the defendant was not negligent or that the deceased was guilty of contributory negligence, or on both grounds. On either ground, as we view the evidence, it would have been a reasonable finding by the jury, and one which it would have been proper for the trial justice to approve.

The trial justice in the instant case has approved the ver-dict of the jury. He saw the witnesses and heard them tes-tify, as did the jury, and he has found no cause to hold that the verdict does not truly correspond to the merits of the case. In this he has a superior advantage over this court, especially in a case of the kind before us where so much is dependent upon a choice of not merely conflicting but con-tradictory testimony.

We are of the opinion, therefore, that his ruling on the motion for a new trial must be sustained.

All of the plaintiffs' exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Thomas L. Carty,* for plaintiff.

*McGovern & Slattery, Fred B. Perkins, William E. Mc-Cabe,* for defendant.