COREDA WILLIAMS and PATRICIA TERRELL, a Minor, b/n/f LUCINDA TERRELL, Plaintiffs in Error, v. HARRY BRIDGEFORD, Executor, and HENRY BEATY, JR., Administrator Pendente Lite, Defendants in Error.—383 S. W. (2d) 770.

Western Section, at Jackson. May 28, 1964.

Certiorari Denied by Supreme Court November 2, 1964.

382

Mary Guidi, Memphis, for plaintiff in error Coreda Williams.

W. C. Rodgers, Memphis, for plaintiff in error Patricia K. Terrell.

Henry H. Hancock, Memphis, for defendant in error.

BEJACH, J. This cause involves an appeal in error by Coreda Williams, nominated as executrix under a will of Martha Thornton dated February 13, 1953, and Lucinda K. Terrell, a minor, suing by next friend who was a beneficiary under the provision of said will, from the verdict of a jury and judgment based thereon in the Circuit Court of Shelby County, Tennessee, sustaining as the last will and testament of said Martha Thornton a paper writing dated March 31, 1961, in which Harry Bridgeford is named executor.

The cause concerns a will contest, tried in the Circuit Court, on issues of *devisavit vel non,* where the sole question was whether a paper writing dated February 13, 1953, or a paper writing dated March 31, 1961, was the last will and testament of Martha Thornton. The jury found in favor of the paper writing dated March 31, 1961; and Coreda Williams and Patricia K. Terrell have appealed in error. The paper writing dated March 31, 1961 was contested on the ground that Martha Thornton, at the time of executing said document, was not mentally competent, and also on the ground that she executed said will under duress or as the result of undue influence. In this opinion, the parties will be designated as appellants and appellees or called by their respective names.

In this Court, as appellants, Coreda Williams and Patricia K. Terrell have filed thirteen assignments of error. It will not be necessary to copy these assignments into this opinion. Counsel for appellants and for appellees have discussed them in groups, and we will dispose of them in like manner. Neither the brief of ap-

pellants, nor that of appellees complies with Rule Twelve of the Rules of this Court; but, in spite of that fact, we will dispose of the case on its merits.

On April 12, 1962, Martha Thornton, a colored woman, 67 years of age, died in Memphis, a resident of Shelby County, Tennessee. On April 18, 1962, Coreda Williams filed in the Probate Court of Shelby County a petition for probate of the will of February 13, 1953; and, on April 26, 1962, Harry Bridgeford filed his petition for probate of the will of March 31, 1961. Answers were filed by each of said parties to the petition of the other contesting the validity of each of said paper writings, and on May 2, 1962, Judge Sylvanus Polk of the Probate Court, entered an order appointing Mr. Henry Beaty, Jr. administrator pendente lite, and certifying both the paper writing of February 13, 1953 and that of March 31, 1961 to the Circuit Court of Shelby County for contest. In the Circuit Court, before Judge Greenfield Polk, Judge of Division V of that Court, issues were made up and the cause was submitted to a jury. On January 29, 1963. Prior to the trial of the cause, Patricia K. Terrell, a minor, filed a petition in the cause, and on February 4, 1963, an order was entered designating Lucinda Terrell grandmother of Patricia K. Terrell, as next friend and/or guardian at litem for her, and making said Patricia K. Terrell, as one of the beneficiaries under the will of February 13, 1953, a party to this cause. After a trial lasting several days, the jury returned a verdict in favor of the will of March 31, 1961. The record does not show how long the jury was out, but counsel for appellants in their brief allege that it was not more than five minutes, and the fact that the jury was out this brief time is conceded by counsel for appellees.

■ ■ The first group of assignments of error is covered by Assignments 1, 2, and 3. These contend that there is no material evidence to support the verdict of the jury, that the evidence in this cause preponderates against the jury verdict, and that the verdict is against the law and the evidence in the case. These assignments are wholly without merit. In our opinion, the clear preponderance of the evidence is in accord with the jury's verdict. Even if it were not, however, this Court is without authority to weigh the evidence, and is bound by the jury's verdict if there is any material evidence to support same. Baskett v. Chuckey Banking Co., 2 Tenn.App. 31; Coalfield Coal Co. v. Mellhorn, 2 Tenn. App. 219; American Nat'l Ins. Co. v. Smith, 18 Tenn.App. 222, 74 S.W.(2d) 1078; Young v. Spencer, 44 Tenn.App. 82, 312 S.W.(2d) 479; McAmis v. Carlisle, 42 Tenn.App. 195, 200, 300 S.W.(2d) 59; and numerous other cases.

In the second group, covered by Assignments 4 and 5, appellants complain of the action of the trial judge in permitting counsel for Harry Bridgeford, executor under the will of March 31, 1961, to open and close the presentation of proof in this cause, and to open and close the argument before the jury. In support of their contention, they rely on the case of McBee v. Bowman, 89 Tenn. 132, 14 S.W. 481. In our opinion, as we will undertake to show, that case does not control the facts of the instant case.

■ In our opinion, there being two wills involved in the contest, and the earlier will being immaterial, if the later will should be upheld, matters of procedure in the presentation of the case were largely under the control and discretion of the trial judge. Section 32-405, T.C.A., which deals with will contests, provides as follows:

"At the first term after the filing of the certificate aforesaid (the certificate of contest provided for in sec. 32-401 T.C.A.), and will, in the office of the clerk of the circuit court, an issue shall be made up *under the direction of the court* (emphasis ours), to try the validity of the same, and the issue or issues thus made up shall be triable at the first term following the filing of the will, certificate, and other necessary papers; provided said papers are filed five (5) days before the term of the court."

From the case of Puryear v. Reese, 46 Tenn. 21, we quote as follows:

"The usual and proper practice in such cases in our courts is: the proponents of the will first introduce the subscribing witnesses, and prove its due execution. The witnesses are usually asked the question of its due execution, and whether they regard the testator of a sound and disposing mind and memory at its execution. The affirmative to this general question is, all that is expected in the first instance. When the validity of the will is contested upon the ground of want of mental capacity, the presumption is against the party alleging the fact of the want of mental capacity. They go forward with their testimony, and having closed their proof, the rebutting testimony of proponent of the will is then introduced.

"It is not necessary, in the examination of the witnesses as to the due execution and attestation of the will, that they should be examined as to the sanity of the testator. The party contesting the validity of the will may cross examine the witnesses as to this point, as he is not obliged to wait until he puts his side of

the case, and then recall the witnesses. The general burden of the issue of *devisavit vel non* is upon the party claiming under the will; but upon any allegation of want of capacity in a testator, it is upon the contestant. The party propounding the will has the right to open and close the case. Such is, and has been, the usual practice of the Circuit Courts of this state, and is the same in most of the states: Redfield on Wills, pp. 40 and 41; S.Conn.Rep. 254; 4 Mass. 259; 7 Pickering 94.'' Puryear v. Reese, 46 Tenn. 25.

In the case of McBee v. Bowman, 89 Tenn. 132, 14 S.W. 481, which is heavily relied on by appellants, two wills were involved, but the cause was presented as a contest of the will of earlier date. In that situation, the Supreme Court did rule that the proponent of that will was entitled to open and close. In that case, Samuel Bowman, who died June 19, 1874, left a paper writing dated January 6, 1872 which gave all of the testator's property to his son, James Wiley Bowman. James Wiley Bowman disposed of all the property during his lifetime, and died on March 30, 1889, nearly 15 years after the death of his father, and more than 17 years after the date of the will of January 6, 1872. After the death of James Wiley Bowman, his children and grandchildren filed a petition in the County Court of Knox County seeking to have the probate of the instrument of January 6, 1872 annulled and to have another paper writing of later date, March 2, 1872, probated as the last will and testament of Samuel Bowman. Under the terms of the later instrument, James Wiley Bowman was devised merely a life estate in the property of Samuel Bowman. R. L. McBee was made a party because he claimed ownership of a valuable portion of the property formerly owned by Samuel Bowman,

which had been conveyed to him by deed of James Wiley Bowman, and he was cast as proponent of the will of January 6, 1872. McBee relied on the will of January 6, 1872 which was being contested by the children and grandchildren of Samuel Bowman. He was treated as plaintiff, but also as contestant of the will of March 2, 1872, on the ground that it was a forgery. He asserted that the true last will and testament of Samuel Bowman was the paper writing dated January 6, 1872. While it is true there were in the case two wills involved, one of January 6, 1872 and the other of March 2, 1872, the one of later date was not offered for probate until 15 years after the death of testator and 17 years after the date of the will, and the litigation was framed as a contest of the will of January 6, 1872, of which McBee was the proponent. From the Supreme Court's opinion, written by Caldwell, J., we quote as follows:

"The order of the county court directing that the cause be certified to the circuit court begins by stating that 'this is a proceeding to contest the will of Samuel Bowman, deceased, dated January 6, 1872.' The issue of *devisavit vel non,* as made up in the circuit court, begins thus: 'This is a contest of the will of Samuel Bowman, deceased, dated January 6, 1872.'

"Thus it is shown that in fact, as in law, the primary matter of contestation was the will of January 6, 1872. As to that, McBee stood in the attitude of proponent and plaintiff. Therefore, under the general rule of practice, whose wisdom is too manifest to admit of question, he had the right to the opening and closing argument, notwithstanding the fact the result of the contest depended on the validity or invalidity of the other instrument, concerning which by far the greater

part of the testimony was introduced:'' McBee v. Bowman, 89 Tenn. 136, 14 S.W. 482.

█ In the instant case, on the other hand, as contrasted with the situation in McBee v. Bowman, neither of the wills here involved had been probated. Both were offered for probate at substantially the same time, and both were certified to the Circuit Court for contest. The question as to which of said wills should be admitted to probate was, therefore, to be decided in the Circuit Court. In that situation, it was, in our opinion, within the sound discretion of the Circuit Court Judge to determine how the issues should be framed. His Honor, Hon. Greenfield Polk, saw fit to make the primary issue in the instant case depend on the validity or invalidity of the will of later date, viz., that of March 31, 1961.

In the case of Lillard v. Tolliver, 154 Tenn. 304, 285 S.W. 576, in which case, as in the case at bar, two wills were being simultaneously contested, and in which the Supreme Court approved the procedure which we here approve, the Supreme Court, speaking through Special Judge Keeble, said:

''Under the rules adopted by this court, the filing of a contest in the county court transfers the jurisdiction for further proceedings in the matter of probate to the circuit court. The proceedings in the circuit court are original and not appellate. Murrell v. Rich, 131 Tenn. 378, 175 S.W. 420.

''The regulation and control of the advent of parties into the proceedings is vested in the circuit court. Patton v. Allison, 7 Humph. 320. As stated by the court in that case, all persons interested, either for or against the will, have a right to be made parties.

"In the case of Hodges v. Bauchman, 8 Yerg. 186, Catron, Judge, says: 'All who are interested may become parties in conducting the litigation in case of a contested will, and, if they do not, it is indispensable to the repose of society that they be concluded.'

"Probate proceedings are not strictly suits with parties plaintiff and parties defendant, where the plaintiffs demand judgment against the defendants. They have, from time immemorial, been declared to be proceedings *in rem*. The purpose of such proceedings is to determine upon the disposition of the property of decedents, to apply it in an orderly way to the payment of debts, and to distribute the remainder to those entitled to receive it either by will or under the statutes of descent and distribution." Lillard v. Tolliver, 154 Tenn. 311-312, 285 S.W. 576.

In the instant case, if the will of March 31, 1961 had been invalidated by verdict of the jury, the will of February 13, 1953 would have been established as the last will of Martha Thornton, and the parties therein named as beneficiaries would have been entitled to take her property. Assignments of error 4 and 5 are overruled.

The next group of assignments of error, as taken up in appellants' brief, deals with Assignments of Error 6 and 13. By Assignment 6, appellants complain of the action of the trial judge in allegedly charging the jury to their detriment, during the voir dire examination of jurors, and Assignment 13 complains of the speedy verdict of the jury after the cause was submitted to it. Apparently appellants blame this result on the allegedly improper statement of the judge, made to the jurors during the voir dire examination. This allegedly improper charge of the judge, during the voir dire examination of

jurors, appears on pages 82 and 83 in the record, as follows:

"MISS GUIDI: Coreda Williams is in here as proponent of the will of February 13, 1953, because the duty rests upon her as proponent of this will to bring it into court and seek to establish the intentions and desires of the testatrix, Martha Thornton as to the disposition of her property after her death. Now, if you, Gentlemen, find that this will was executed in conformity with the requirements of the Statutes of Tennessee, at that time she had sound mind, and that she made this will of her own volition, if we prove that, will you, Gentlemen, bring in a verdict sustaining the will of the 13 day of February, 1953?

"MR. HANCOCK: Miss Guidi, excuse me. That is not the test, Your Honor.

"THE COURT: I will clear that up now. As between these two documents, Gentlemen of the Jury, it is your duty from the whole body of the proof to determine which of these wills is the last will and testament of the testatrix, namely, the will that Miss Guidi is speaking of, and that is the will of February 13, 1953, and the will dated March 31, 1961. What you must do is to determine between these two wills according to the proof that is offered and according to the law given you by the Court, which of these two wills is the last will and testament of this testatrix, the woman who bestows her property under the will.

"MISS GUIDI: May I please ask the jury whether or not, if we prove, may it please the Court, the requirements under the statute, and it is established as her

voluntary act, that under those circumstances, they would find that will, merely stating the law?

"THE COURT: Miss Guidi, I have stated to the jury what I believe to be the issues that they are to determine. To answer your question, and I don't propose to get into an argument with you about the matter, you may prove what you seek to prove, and on the other hand, under certain circumstances, it could very well be the last will and testament of this woman.

"MISS GUIDI: May it please the Court, may we note an exception?

"THE COURT: You may have your exception, Miss Guidi.

"Whereupon, Miss Guidi no further examined the jury and took her seat at the counsel table, and Mr. Rodgers, for his client, examined the jury and accepted 12 men as a jury to try the case.

"The jury was duly sworn."

The above quoted statement of the trial judge to the jurors during the voir dire examination could not have been prejudicial to the rights of appellants. In the first place, when the judge said, "and on the other hand, under certain circumstances, it could very well be the last will and testament of this woman", he was obviously referring to the will of February 13, 1953 and not to the will of March 31, 1961. Consequently, even if the statement made by the judge was improper, which we do not hold, the error, if any, was in favor of appellants and not against them. In the second place, it was, in any event, entirely within the discretion of the court to clarify any confusion involved during the questioning of jurors during the voir dire examination. Kennedy v. State, 186

Tenn. 310, 319, 210 S.W.(2d) 132; 283 U.S. 846, 68 S.Ct. 659, 92 L.Ed. 1129.

■ As to the brief time which the jury deliberated before returning its verdict, no Tennessee statute or decision has been pointed out to us tending to sustain appellants' contention in this matter; but a case involving this identical question, from the adjoining State of Arkansas, is cited in appellees' brief This case is Breitenberg v. Parker, 237 Ark. 261, 372 S.W.(2d) 828. From the opinion of the Supreme Court of Arkansas in that case, we quote as follows:

"The trial of this cause began on October 25th, and the verdict was returned on October 26th. On November 8, 1962, Breitenberg filed a motion for new trial, supported by the affidavit of counsel to the effect that less than fifteen minutes transpired from the time the jury left the box to consider its verdict until the time the jury returned to announce the verdict; and the appellant urges that this was too short a time to allow the jury to deliberate. When the jury came in with the verdict the appellant knew at that time how long the jury had been out, yet did not ask that the jury be sent back to reconsider the verdict or make any objection to the brevity of jury consideration until November 8th, which was long after the trial. If there had been any objection to be registered, it should have been registered before the jury was allowed to separate.

"We find no merit to this point urged by appellant. We have no statute in Arkansas which prescribes a length of time that a jury should consider its verdict; but the general rule from the vast number of cases on the point is well stated in 89 C.J.S. Trial sec. 462c, p. 93:

" 'While the verdict should be the result of sound judgment, dispassionate consideration, and conscientious reflection, and the jury should, if necessary, deliberate patiently and long on the issues which have been submitted to them, where the law does not positively prescribe the length of time a jury shall consider their verdict, they may render a valid verdict * * * on very brief deliberation after retiring, especially where the evidence is not complicated, or the facts are clearly drawn. The trial court may, at its discretion, cause the jury to reconsider the case if their decision is so hasty as to indicate a flippant disregard of their duties.'

"Appellant's counsel cite us to no Arkansas case involving this question of speed of deliberation of the jury, and our search has failed to disclose any such case; but there are many cases from other jurisdictions, all to the effect that the losing party has no ground for a new trial on the basis that the jury verdict was reached in a very short time. Some such cases are: Beach v. Commonwealth (Ky.), 246 S.W.(2d) 587; O'Connell v. Ford, 58 R.I. 111, 191 A. 501; Urquhart v. Durham (N.C.) [156 N.C. 581], 72 S.E. 630; Carrara v. Noonan, 69 R.I. 111, 31 A.(2d) 424; Patillo v. Thompson, 106 Ga.App. 808, 128 S.E.(2d) 656; Gaskill v. Cook (Mo.), 315 S.W.(2d) 747; and Rustigian v. Molloy (R.I.), 186 A.(2d) 724. We like the language of the Kentucky Court in Beach v. Commonwealth, supra:

" 'The fact that the jury returned a verdict in about eight minutes after having the case submitted to them does not indicate to us that Beach did not receive a fair trial when the issues of fact were so clearly drawn. It is true that a verdict should be the result of dis-

passionate consideration and the jury, if necessary, should deliberate patiently until they reach a proper conclusion concerning the issues submitted to them. Yet where the law does not positively prescribe the length of time a jury shall spend in deliberation, the courts will not apply an arbitrary rule based upon the limits of time.' "

Assignments of Error 6 and 13 will be overruled.

By Assignments of Error 7, 8 and 9, appellants complain of the action of the trial judge in admitting in evidence over their objection testimony of witnesses, including one of the subscribing witnesses to the will of March 31, 1961, about conversations with the testatrix, Martha Thornton, concerning her reasons for making the will of March 31, 1961, and her satisfaction with it. In support of these assignments, appellants rely upon Bowerman v. Burris, 138 Tenn. 220, 197 S.W. 490. That case holds that such conversations are inadmissible when offered for the purpose of attacking the validity of a will. In the instant case, however, the statements of the testatrix, which are complained of by these assignments of error, were not offered for the purpose of establishing either the validity or contents of the will itself, but, among other purposes, for the purpose of rebutting the inference that the testatrix's state of mind on March 31, 1961 was such that she did not know she had executed the will. This was one of the contentions of appellants in support of their claim that the will of February 13, 1953 was in fact the last will of the testatrix, Martha Thornton. In the case of Hickey v. Beeler, 180 Tenn. 31, 171 S.W.(2d) 277, in disposing of the admissibility of such statements made by a testatrix, the Supreme Court, in an opinion written by Mr. Justice Prewitt, later Chief

Justice, quoted with approval from the decision of the United States Supreme Court in Throckmorton v. Holt, as follows:

" 'The question before us is ably discussed in the opinion of the United States Supreme Court in the case of Throckmorton v. Holt, reported in 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663. The issues in that case were forgery and revocation, but the court considered fully the admissibility of this character of testimony and refers to cases on both sides of the question. Referring to the cases denying the admissibility of testimony, it is said: "In the cases contained in Class A it is held that declarations, either oral or written, made by a testator, either before or after the date of the alleged will, unless made near enough to the time of its execution to become a part of the res gestae, are not admissible as evidence in favor of or against the validity of the will. The exception to the rule as admitted by these cases is that where the issue involved is the testamentary capacity of the testator and also when questions of undue influence over a weakened mind are the subject of inquiry, declarations of the testator made before or after, and yet so near to the time of the execution of the will as to permit of the inference that the same state of mind existed when the will was made, are admissible for the purpose of supporting or disproving the mental capacity of the testator to make a will at the time of the execution of the instrument propounded as such. These declarations are to be admitted, not in any manner as proof of the truth of the statements declared, but only for the purpose of showing thereby what in fact was the mental condition, or, in other words, the mental capacity of the testator at the time when the instru-

ment in question was executed." ' " Hickey v. Beeler, 180 Tenn. 38-39, 171 S.W.(2d) 277, 279-280.

Assignments of Error 7, 8 and 9 will be overruled.

By Assignment of Error No. 10, appellants complain of the admission in evidence of testimony of Harry Bridgeford, executor named in the will of March 31, 1961, about conversations between him and Frank Thornton, deceased husband of testatrix, Martha Thornton. It is contended by appellants that admission of this testimony violated the hearsay evidence rule. On the other hand, it is contended by appellees that the testimony was competent for the purpose of establishing the state of mind of Harry Bridgeford and to show his motives, which had been put in issue by appellants. It may be that the testimony in question was competent, for the reasons set out by us in disposing of Assignments of Error 7, 8, and 9; but, in any event, even if that testimony was improperly admitted, such admission would not, under the provisions of our harmless error statute, 27-117 T.C.A., constitute reversible error. Assignment of Error 10 is accordingly overruled.

Assignment of Error No. 11 complains of the action of the trial judge in excluding surrebuttal testimony offered by appellants. The general rule on that subject was settled in Tennessee by the Supreme Court as early as 1848 in the case of Story v. Saunders, 27 Tenn. 663. In that case it was held that defendants are not entitled after closing their rebutting evidence to introduce additional proof which should have been offered as proof in chief. In Kidd v. Condry, 25 Tenn.App. 182, 154 S.W. (2d) 530, this Court, Eastern Section, held that a plaintiff was not entitled to introduce as rebuttal proof, testimony which should have been offered as part of the proof

in chief. In disposing of a closely related question, involving the discretionary right of the trial judge to reopen a case for additional testimony, the Supreme Court held that a refusal of the trial judge to reopen a case for such testimony was not an abuse of discretion. Murrell v. Rich, 131 Tenn. 378, 175 S.W. 420. Murrell v. Rich, like the instant case, involved a will contest, and has, for that reason, we think special weight on the issue before us. Our conclusion is that, at most, the question of whether or not the trial judge in the instant case should have permitted the introduction of surrebuttal testimony was a matter wholly within his discretion, and that he did not abuse his discretion. Assignment of Error No. 11 is overruled.

Assignment of Error No. 12 complains of the action of the trial judge in ignoring an objection made by appellants to the argument before the jury of counsel for appellees. This argument dealt with inferences which counsel for appellees undertook to draw from proof of an incident which had occurred in the hospital during the last illness of Martha Thornton. The proof was that a disturbance occurred at her bedside which caused her distress and resulted in visitors being excluded from her room. Appellants and some of their witnesses denied being present when this disturbance occurred, but counsel for appellees undertook to argue that it might be properly inferred from the evidence that these witnesses could have been present. In the case of Eve v. Union Central Life Insurance Co., 26 Tenn.App. 1, 167 S.W.(2d) 8, this Court, Middle Section in an opinion written by Howell, J., said:

"Several assignments of error are directed at the argument of counsel. We have carefully read the argu-

ment as it appears in the transcript and see nothing improper in permitting counsel to call the attention of the jury to reasonable and justifiable inferences which may be drawn from the testimony of witnesses.'' Eve v. Union Central Life Ins. Co., 26 Tenn.App. 17, 167 S.W.(2d) 14.

In the case of J. Avery Bryan, Inc. v. Hubbard, 32 Tenn.App. 648, 225 S.W.(2d) 282, where counsel for defendant had objected to the argument of plaintiffs counsel, and had moved for a mistrial, which motion was overruled, this court, Eastern Section, refused to reverse the case, holding that the matter was one within the discretion of the trial judge, which discretion had not been abused. From the court's opinion, written by McAmis, J., now Presiding Judge, we quote as follows:

''The reference to defendants as 'well-to-do' was, of course, highly improper and objectionable as reflecting upon their ability to pay any judgment rendered in the case on trial. The term is generally considered as indicating prosperity, affluence or wealth. There was no proof on that question and it was not an issue in the case. Was its use inflamatory and prejudicial to the extent of entitling defendant to a new trial?

''In general, control over the argument of counsel is lodged with the trial court which exercises a sound judicial discretion as to what shall and shall not be permitted in argument. Ferguson v. Moore, 98 Tenn. 342, 39 S.W. 341; Kizer v. State, 80 Tenn. 564; East Tennessee V. & G. R. Co. v. Gurley, 80 Tenn. 46; Stone v. O'Neal, 19 Tenn.App. 512, 90 S.W.(2d) 548.

''Generally the appellate courts will not interfere with the discretionary action of the trial court in refus-

ing a mistrial or a new trial for misconduct of counsel in argument unless the argument is clearly unwarranted and made purely for the purpose of appealing to passion, prejudice and sentiment which has not or cannot be removed by sustaining objection of opposing counsel, Pullman Co. v. Pennock, 118 Tenn. 565, 102 S.W. 73; Nashville Chattanooga & St. Louis Ry. Co. v. Mangrum, 15 Tenn.App. 518, or unless the appellate court finds affirmatively that it affected the result of the trial, Public Acts 1911, Chap. 32; Pullman Co. v. Pennock, supra; Lauterbach v. State, 132 Tenn. 603, 179 S.W. 130; Pearson v. State, 143 Tenn. 385, 226 S.W. 538; Petway v. Hoover, 12 Tenn.App. 618; Stone v. O'Neal, supra.

"The remarks objected to in this case were only mildly inflamatory and the jury was finally instructed that the financial condition of the defendants was not an issue in the case. We think it entirely unlikely that the remarks would tend to influence the jury on the issue of liability and it is not seriously insisted that the verdict is excessive. There is an assignment to that effect but it is not supported by the brief and, under the familiar rule, may be considered waived. Counsel did not persist in using the term or indulge in other improper argument after the court ruled. We cannot say the trial court abused his discretion in ruling that the argument was objectionable only if it reflected upon defendants' financial condition. We cannot say from the record that it affirmatively appears that the error, if such it was, affected the result of the trial and the assignment complaining of this action must be overruled." J. Avery Bryan, Inc. v. Hubbard, 32 Tenn.App. 657-659, 225 S.W.(2d) 286-287.

 No motion for mistrial was made in the instant case; and unlike Presiding Judge McAmis, in the J. Avery Bryan, Inc. case, we can not say that counsel's argument was improper. We can say, however, that the argument objécted to probably did not adversely affect the outcome of the lawsuit, and, under our harmless error statute, 27-117 T.C.A., no reversal can be granted on account of same. Assignment of Error No. 12 is overruled.

All of appellants' assignments of error will be overruled and the judgment of the lower court will be affirmed.

The costs of the cause will be adjudged against the appellants.

Avery P.J.,(W.S.), and Carney J., concur.