**Webb ANGLIN, Appellant,**

**v.**

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Jan. 18, 1977.

Certiorari Denied by Supreme Court June 6, 1977.

Seth W. Norman and Robert H. Schwartz, Nashville, for appellant.

Brooks McLemore, Atty. Gen., Robert E. Kendrick, Asst. Atty. Gen., Nashville, Robert L. Jones, Asst. Dist. Atty. Gen., Columbia, Jim T. Hamilton, Asst. Dist. Atty. Gen., Mount Pleasant, for appellee.

TATUM, Judge.

OPINION

The appellant, Webb Anglin, was convicted by a Maury County jury of aiding and abetting an assault with intent to commit armed robbery. His punishment was fixed at not less than 10 years nor more than 21 years in the State Penitentiary. We affirm the conviction.

Assignments I, II, V and VIII all attack the sufficiency of the evidence, saying (1) the evidence preponderates against the verdict; (2) the verdict is contrary to the law and the evidence; (3) that appellant was entitled to a directed verdict of acquittal; and (4) that the conviction cannot be sustained "merely by proof of the presence of defendant at or near the scene of the alleged offense". In considering these assignments, we will summarize the facts as shown by the accredited evidence:

Larry Jackson, an admitted accomplice, drug addict and felon, was the principal witness for the State. He testified that after becoming acquainted with the appellant, he met with the appellant, appellant's wife, Johnny Baker and Kim Brown at the appellant's office. (Appellant was a vacuum cleaner distributor and salesman). At this meeting, the appellant proposed an armed robbery of Cy Young. The appellant pointed out that since Young was a bootlegger, Young might have a large sum of money and might not report the robbery.

At approximately 3:30 or 4:00 o'clock P.M. on December 15, 1975, Larry Johnson, Johnny Baker and the appellant met at the appellant's residence in Columbia, Tennessee. The appellant furnished Johnson and Baker with ski masks and rubber gloves. He also furnished Johnson with a .38 caliber Police Special pistol. Baker had a .380 automatic pistol that he had previously purchased from the appellant.

The appellant then drove Baker and Johnson to Cy Young's combination residence and car lot, which was located approximately two miles from Columbia on the Iron Bridge Road. Baker and Johnson left the appellant's gray (or silver) 1975 Cadillac automobile near one end of the victim's driveway. They were wearing their ski masks and gloves and were armed with their pistols. The arrangement was that the appellant would drive around in the immediate vicinity of Cy Young's and pick them up in his automobile after the robbery was accomplished.

After walking to Cy Young's residence from the road, Baker and Johnson found Young's front door to be locked, although the appellant had assured them that it would be unlocked. They then knocked on the door and had some conversation with Cy Young about buying an automobile. When Cy Young came to the door, he looked through a peep-hole instead of opening the door, and saw at least one of the would-be robbers outside of his door. He closed the peep-hole and then immediately telephoned the police. Johnson shot at Cy Young's doorknob at least two times and fired other shots while leaving. Baker shot at the wall and side window as he was leaving.

As Baker and Johnson approached the Iron Bridge Road, they saw the appellant's car on the road, but they also saw "blue lights" coming in the opposite direction. They left the road and hid under a fence with honeysuckle vines for about three hours, in the rain, until it was dark. Johnson and Baker then walked to Stone's Bar-B-Q where they telephoned the appellant's residence and later, Kim Brown came after them in a Pinto automobile owned by the appellant's wife.

Deputy Sheriff Bob Baucom testified that according to his records, he received the telephone call from Young at 4:31 P.M. and arrived at the scene at 4:36 P.M. As he approached, he observed a gray Cadillac occupied by the appellant sitting in the road near the iron bridge, about 100 yards from

Cy Young's driveway. There were no other vehicles in the vicinity. When the patrol car approached, the Cadillac drove off. The officer turned around and, with his blue lights flashing, followed the gray Cadillac, but the Cadillac did not stop until it reached the Columbia City Limits. The appellant was the only occupant of the Cadillac. He told the officer that he was in the area to meet "a man" to demonstrate a vacuum cleaner. There was no other residence in the vicinity of Cy Young's place. The officer did not arrest the appellant at that time. He was arrested only after the witness, Larry Johnson, implicated him in the attempted robbery.

The appellant testified that he was in the area of the attempted robbery on his return from the home of Mrs. Iris Brown, where he had been demonstrating vacuum cleaner equipment. He said that he had met a sales trainee in the area who accompanied him to Mrs. Brown's residence and that after the demonstration, he returned the sales trainee to the sales trainee's vehicle. He said that he took a different route from the Brown residence, hoping to find a better way back to Columbia and thereby, came upon the Iron Bridge Road.

Mrs. Iris Brown testified as a witness for the appellant, but she testified that the appellant had been to her house "the first part of December". She said that Mickey Wright was with the appellant that day and that the two of them were traveling together. She also testified that it made no sense at all for one to travel between her house and Columbia by way of the Iron Bridge Road. Mrs. Brown further testified that two or three weeks prior to trial, the appellant requested that she testify that he had been alone on the day of the demonstration, but that she had refused to comply with this request.

Mickey Wright testified that he had accompanied the appellant on the occasion when the vacuum cleaner was demonstrated to Mrs. Brown, in early to mid-December of 1975. He also testified that he traveled with the appellant in the Cadillac from the appellant's office in Columbia to Mrs. Brown's house and returned to Columbia with him. He said that they did not go to or from the Brown residence by way of the Iron Bridge Road or Cy Young's place.

The appellant says that his mere presence at the scene of the robbery is insufficient to make him a principal under the provisions of T.C.A. § 39–109, citing *Essary v. State,* 210 Tenn. 220, 357 S.W.2d 342 (1962). We agree that in order to be deemed a principal offender under T.C.A. § 39–109, one must not only be present at the scene of a crime, but must be either aiding and abetting in the criminal offense or ready and consenting to aid and abet in the commission of the offense. We find ample evidence in the record to support the jury's verdict that the appellant was not only present, but that he aided and abetted and was ready and consenting to further aid and abet in the commission of this offense.

The appellant also insists that he was convicted upon the uncorroborated testimony of an accomplice. Larry Johnson was definitely an accomplice. The rule requiring corroboration of the testimony of an accomplice to sustain a conviction is set out in *Hawkins v. State,* 4 Tenn.Cr.App. 121, 469 S.W.2d 515, 520 (1971):

> ". . . The rule, simply stated, is that there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. *State v. Fowler,* 213 Tenn. 239, 373 S.W.2d 460; *Boulton v. State,* 214 Tenn. 94, 377 S.W.2d 936. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. *Sherrill v. State,* 204 Tenn. 427, 321 S.W.2d 811. It is not necessary that

the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence be slight and entitled, when standing alone, to but little consideration. *Stanley v. State,* 189 Tenn. 110, 222 S.W.2d 384; *Binkley v. State,* Tenn.Cr. App., 434 S.W.2d 336.

'The entire conduct of the accused may be looked to for the corroborating circumstances; and if, from those circumstances, the crime may fairly be inferred, the corroboration is sufficient. See 23 C.J.S. Criminal Law § 812(4).' *Binkley v. State,* supra.

The quantum of evidence sufficient to corroborate the testimony of an accomplice is for the determination of the jury. From the facts proved in evidence the jury is entitled to draw reasonable inferences, and this Court may not substitute its judgment or inferences for those of the jury. *Stanley v. State,* supra; *Binkley v. State,* supra."

*See also, Monts v. State,* 214 Tenn. 171, 379 S.W.2d 34 (1964); *Henley v. State,* 489 S.W.2d 53 (Tenn.Cr.App.1972).

The testimony of Cy Young, describing the attempted robbery, is sufficient in and of itself to corroborate the accomplice's testimony that the crime was committed. The testimony of Officer Baucom was sufficient corroboration of Johnson's testimony (that the appellant was waiting for Johnson and Baker). The jury was not bound to accept the appellant's explanation as to why he was in this vicinity. As above stated, the quantum of the corroborating evidence is a question for the jury and we have no difficulty in understanding why the jury resolved this question adversely to the appellant, in view of the testimony of Mrs. Brown and Mickey Wright.

The guilty verdict, approved by the Trial Judge, removes appellant's presumption of innocence and clothes him in a presumption of guilt. The burden is upon the appellant to show on appeal that the evidence preponderates against the verdict and in favor of his innocence and we will not disturb the jury verdict without such showing. *Sikes v. State,* 524 S.W.2d 483 (Tenn. 1975); *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963). We do not find that the evidence preponderates against the jury verdict. Assignments I, II, V and VIII are overruled.

In Assignment III, the appellant says that the sentence imposed by the jury is excessive and indicates passion, prejudice and caprice on the part of the jury. The punishment imposed is within the legal limits prescribed for the offense for which the appellant was convicted. Therefore, the sentence imposed by the jury is not excessive and it does not indicate passion, prejudice and caprice on the part of the jury. T.C.A. § 39–607; *Henderson v. State,* 539 S.W.2d 843 (Tenn.Cr.App.1976); *French v. State,* 489 S.W.2d 57 (Tenn.Cr.App.1972). Assignment III is overruled.

The defendant next says that his constitutional rights to a trial by an impartial jury were violated because the jury deliberated only for five minutes or less before finding him guilty. The record reflects that the jury retired at 2:55 P.M. and returned into court at 3:05 P.M., with the verdict. While we do not think it determinative, the jury deliberated, according to the record, for ten minutes. We have found no case reported from any court of any of the fifty states or from the United States reversing a criminal case because of the brevity of the jury deliberation. The appellant's counsel has cited no authority in support of this assignment. Neither the brevity of the time of the jury's deliberation nor the length of the sentence imposed, if within the limits fixed by statute, indicates either passion, prejudice or caprice on the part of the jury or misconduct on the part of the jury. *Wheeler v. State,* 220 Tenn. 155, 415 S.W.2d 121 (1967). The length of time that a jury deliberates has no bearing on the strength or correctness of their conclusions or the validity of their verdict. *Williams v. Bridgeford,* 53 Tenn. App. 381, 383 S.W.2d 770 (1964); *Campbell*

v. *Campbell,* 29 Tenn.App. 651, 199 S.W.2d 931 (1946); *Jennings v. Brown,* 3 Tenn. C.C.A. (Higgins) 113, 125 (1912). The State has cited several criminal cases from various jurisdictions where the courts have declined to reverse felony convictions when the jury deliberated ten minutes or less. Some of these cases are: *People v. Mundt,* 31 Cal.App.2d 685, 88 P.2d 767 (1939) (robbery, six minutes deliberation); *Beach v. Commonwealth,* 246 S.W.2d 587 (Ky.1952) (murder, eight minutes); *State v. Turner,* 165 La. 657, 115 So. 814 (1928) (murder, five minutes); *Johnson v. State,* 252 So.2d 221 (Miss.1971) (receiving and concealing stolen property, seven minutes); *State v. Cline,* 452 S.W.2d 190 (Mo.1970) (burglary and larceny, ten minutes). There are many more.

The evidence in this case was simple, clear and convincing of the appellant's guilt. We have no doubt that this enabled the jury to reach a speedy verdict. We will not presume or speculate that the jury was corrupt, unfair or partial. Assignment IV is overruled.

■ The appellant next says that the Court erred in admitting a .38 caliber pistol into evidence because there is no proof connecting the pistol with the appellant. Larry Johnson testified that the appellant furnished him with a dark blue or black .38 caliber Police Special pistol that was an air-weight model with recessed hammer and wooden handle grips, and that it was loaded with five cartridges. Johnson testified that the pistol belonged to Brown Matlock. The appellant had told the witness that he (the appellant) had borrowed it from Matlock. Johnson also stated that he recognized the gun because he had seen Brown Matlock with it several times. Johnson further testified that immediately after the attempted robbery, he left the pistol at the appellant's office. A member of the Sheriff's Department testified that he obtained the .38 caliber Smith & Wesson pistol which was introduced into evidence from Brown Matlock subsequent to the attempted robbery. Johnson testified that the .38 caliber pistol taken from Brown Matlock was "the same or one similar" to the pistol furnished to Johnson by the appellant for use in the proposed robbery.

When the evidence is linked together, we think that it tends to establish that the pistol introduced in evidence was the same pistol used by Johnson in the attempted robbery that Johnson said was furnished to him by the appellant. We think that the pistol was admissible. However, we might add that the admission of the pistol into evidence did not affect the result. If Brown Matlock had two identical pistols, the introduction in evidence of one when the other was actually used in the attempted robbery would not in any manner prejudice the appellant or affect the verdict of the jury. The material fact was that Matlock did own a pistol fitting the description of the one used by Johnson in the attempted robbery.

Assignment of Error VI is overruled.

■ The appellant next says that the Court erred in allowing the .38 caliber pistol into evidence "on the ground that after request for inspection of evidence by the defendant, the State neglected or failed to produce same as required by law". The appellant insists that he was entitled to inspect the pistol under T.C.A. § 40–2044. This Code Section provides, in part:

> "Upon *motion of a defendant,* or his attorney, at any time after the finding of an indictment or presentment, the court *shall order* the attorney for the state, or any law enforcement officer, to permit the attorney for the defendant to inspect and copy or photograph . . . tangible objects, obtained from or belonging to the defendant or obtained from others which are in possession of, or under the control of the attorney for the state or any law enforcement officer. . . ." (Emphasis supplied).

The record in this case does not reflect any oral or written motion to inspect as T.C.A. § 40–2044 contemplates. There is no order of the Court in the record responding to any motion under this Code Section. According to the record, the only time this matter was mentioned in the Trial Court

was when the pistol was offered in evidence. The appellant's counsel objected to the receipt of the pistol into evidence, and stated to the Court that he had mentioned the matter of the inspection of physical evidence to the District Attorney General "earlier, right at the beginning of this trial". It is essential that a party, by motion, obtain an order of the Court to entitle himself to the benefits of T.C.A. § 40–2044. The Trial Judge was never called upon to rule as to whether the appellant was entitled to inspection of this pistol under T.C.A. § 40–2044. He was only called upon to rule whether the pistol was admissible as evidence. Since the appellant failed to bring the matter to the attention of the Trial Judge for an adjudication as to whether he was entitled to inspect the pistol, we must overrule this assignment. *Fox v. State,* 1 Tenn.Cr.App. 308, 441 S.W.2d 491, 496 (1968). We again observe that an earlier view of the pistol would not have benefited the appellant. No effort was made in the appellant's Brief to even hypothesize how an earlier view of this pistol would have affected the results or benefited the appellant. Assignment VII is overruled.

In Assignments IX and X, the appellant complains of the final argument of the Assistant District Attorney General. In his argument, the Assistant District Attorney General referred to the appellant as "master-mind" and referred to his automobile as "silver eagle". He also referred to the Cadillac as "returning to the nest". Appellant further complains of the Assistant District Attorney General referring to persons not charged in the case on trial as defendants or potential defendants, particularly Kim Brown, Brown Matlock, Johnny Baker, Larry Johnson, and others. We cannot consider these assignments. It is well-established that objectionable or improper argument and remarks of counsel afford no ground for a new trial, where no objection is made or exception taken at the time of the argument. *Staggs v. State,* 210 Tenn. 175, 357 S.W.2d 52 (1962); *Rye v. State,* 532 S.W.2d 941 (Tenn.Cr.App.1975). The appellant did not object to the State's argument and even if prejudicial error had been committed, it was waived by the silence of the appellant.

Moreover, to justify a reversal on the ground of improper argument of counsel, it must affirmatively appear that the improper conduct affected the verdict to the prejudice of the defendant. *Hunter v. State,* 222 Tenn. 672, 440 S.W.2d 1 (1969); *Armstrong v. State,* 3 Tenn.Cr.App. 505, 464 S.W.2d 312 (1970). The argument complained of did not affect the verdict. Assignments IX and X are overruled.

Let the judgment of the Criminal Court of Maury County be affirmed.

WALKER, P. J., and DWYER, J., concur.