IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. DEJUAN JACQUES SCOTT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-C-1791      Cheryl Blackburn, Judge**

---

**No. M1999-01672-CCA-R3-CD - Decided June 30, 2000**

---

The defendant, DeJuan Jacques Scott, appeals his conviction for especially aggravated robbery, contending (1) that the evidence was insufficient to show that he was the assailant, (2) that the short deliberation by the jury reflects a verdict based upon improper considerations, and (3) that his sentence is excessive. We hold that the evidence of the defendant's identity is sufficient and that the length of deliberations alone has no bearing upon the verdict. Because the defendant has failed to provide a transcript of the sentencing hearing, we presume the sentence imposed by the trial court is correct. We affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIPTON, J., delivered the opinion of the court, in which RILEY and GLENN, JJ., joined.

John E. Rodgers, Jr., Nashville, Tennessee, attorney for appellant, DeJuan Jacques Scott.

Paul G. Summers, Attorney General & Reporter; Clinton J. Morgan, Counsel for the State; Victor S. Johnson, III, District Attorney General; and Grady Alan Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, DeJuan Jacques Scott, was convicted in a jury trial in Davidson County Criminal Court of especially aggravated robbery, a Class A felony. The trial court sentenced him to twenty-five years as a Range I, violent offender. In this appeal as of right, the defendant contends (1) that the evidence was insufficient to show that he was the assailant, (2) that the short deliberation by the jury reflects a verdict based upon improper considerations, and (3) that his sentence is excessive. We affirm the judgment of conviction.

The victim, Kimwanis Murphy, who has been deaf since she was a baby, testified with the aid of an interpreter. She said that in the early morning hours of May 24, 1997, she was walking home after being at a friend's place a block from her home. She said that it was "dusk" with the sun almost coming up and that street lights were on. She essentially described the events as follows: The defendant approached her from the front with a knife while a light-skinned man approached

from behind with a metal baseball bat. The defendant tried to take her purse, but she would not let go. However, the defendant cut her wrist three times, and she was unable to hold the purse. Then the man behind her hit her on the neck and head with the baseball bat. She lost consciousness for a short period of time but was able to seek help. The victim testified that she received three broken vertebrae in her neck and a cracked skull. She said her cuts required about eighty stitches.

The victim testified that two or three days after the assault, she saw the defendant's picture in the newspaper. She contacted the police and was then shown a series of photographs from which she identified the defendant as her assailant. The victim acknowledged that she has worn glasses most of her life and that she has some difficulty seeing without them. However, she said that although she was not wearing her glasses when she was attacked, the defendant got very close to her and that she was certain in her identification.

Metro police detective, Clifford Craighead, testified that he received a call on June 1, 1997, that the victim had seen the suspect's picture in the newspaper. He said that he prepared an array of photographs, including the defendant's photograph, and showed it to the victim. He said that the victim identified the defendant as her assailant.

The defendant testified and denied robbing the victim. He said that the victim testified at his preliminary hearing that her assailant was five feet, four inches tall and did not have gold teeth. He said he is six feet, one-inch tall and has six teeth that were capped with gold in April 1997.

The defendant testified that he was living with his aunt, Sharon Boyd, at the time of the events in question and that his girlfriend, LaToya Buchanan, was staying with him. He said that he would have been asleep at home at the time of the offense. He stated that at the time of the trial, his aunt was at work and his girlfriend was at home, but they were not called as witnesses. No other witnesses testified.

The defendant contends that the evidence is insufficient to identify him as the perpetrator. He points to such things as the victim's poor eyesight, the lack of sunlight, and purportedly conflicting statements made by the victim. The state responds that the identity of the defendant as the assailant is a question of fact for the jury to determine and that conflicts in the testimony are, also, for the jury to determine. We agree.

The determination of the weight and credibility of the testimony of witnesses and reconciliation of conflicts in that testimony are entrusted exclusively to the trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). On appeal, it is our duty to affirm if the evidence is sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 , 99 S. Ct. 2781, 2789 (1979). In this respect, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The victim testified about the circumstances surrounding the robbery and the severity of her

injuries. She positively identified the defendant as her primary assailant. She explained that she could easily see the defendant's face because they were so close together. The jury was entitled to accredit her testimony. The evidence is sufficient.

Next, the defendant contends that the jury improperly reached a verdict in that the short duration of deliberation by the jury would have prevented it from giving due consideration to all aspects of the case. He states that the jury deliberated for only fourteen minutes. The record reflects that the jury returned with its verdict fifteen minutes after it retired for deliberations. In Anglin v. State, 553 S.W.2d 616 (Tenn. Crim. App. 1977), this court reviewed a trial of longer duration than in the present case but in which the jury returned a verdict after deliberating ten minutes. It stated the following:

> Neither the brevity of the time of the jury's deliberation nor the length of the sentence imposed, if within the limits fixed by statute, indicates either passion, prejudice or caprice on the part of the jury or misconduct on the part of the jury. Wheeler v. State, 220 Tenn. 155, 415 S.W.2d 121 (1967). The length of time that a jury deliberates has no bearing on the strength or correctness of their conclusions or the validity of their verdict. Williams v. Bridgeford, 53 Tenn. App. 381, 383 S.W.2d 770 (1964); Campbell v. Campbell, 29 Tenn. App. 651, 199 S.W.2d 931 (1946); Jennings v. Brown, 3 Tenn. C.C.A. (Higgins) 113, 125 (1912).

Anglin, 553 S.W.2d at 620-21. We believe that no inference of impropriety may be drawn in the present case based solely upon the length of time that the jury deliberated. Nor does the record hint of any other impropriety.

Finally, the defendant requests us to "consider sua sponte the sentencing considerations in this case," asserting that the sentence is excessive. However, as the state points out, not only does the defendant fail to specify any factual or legal reason to support his assertion, but the record on appeal does not contain a transcript of the sentencing hearing. A trial court's sentencing determinations are entitled to a presumption of correctness upon review. See Tenn. Code Ann. § 40-35-401(d). The duty is now upon the defendant to show us what was incorrect about the sentencing process. He has failed to do this. In the absence of the sentencing hearing transcript, which is essential for our review, we are to presume that the trial court's rulings are correct, and we are precluded from considering any sentencing issue in this case.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.